UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARIANNA SUAREZ,

          Plaintiff,

    v.

BANK OF AMERICA CORPORATION,

          Defendant.

Case No. 18-cv-01202-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 9

# INTRODUCTION

Pending before the Court is Defendant Bank of America, N.A.'s Motion to Dismiss or to Strike. Mot., Dkt. No. 9. Plaintiff Arianna Suarez filed an Opposition (Dkt. No. 10) and Bank of America filed a Reply (Dkt. No. 11). The Court previously found this matter suitable for disposition without oral argument. Dkt. No. 12. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Bank of America's Motion for the following reasons.

# BACKGROUND

**A.**    **Factual Allegations**

Plaintiff began working for Bank of America as an Assistant Manager in 2003. Compl. ¶¶ 1, 13, Dkt. No. 1-2. Her duties included opening and closing the banking center, coaching associates, handling customer complaints, and managing vault reserves. *Id.* ¶ 1.

Plaintiff's immediate supervisor consistently denied Plaintiff the opportunity to take her lunch and other rest breaks and reprimanded Plaintiff when she attempted to take a break or use the restroom. *Id.* ¶ 14. Plaintiff tried to indicate on her records that she had not been able to take a meal period for the day, but her supervisor prevented her from doing so. *Id.* Plaintiff was

therefore never compensated in the form of a meal premium for missing her meal periods. *Id.*

Plaintiff discovered she was pregnant in May 2017; in July 2017, she discovered she had developed gestational diabetes. *Id.* ¶ 16. This condition required Plaintiff to take breaks to check and regulate her blood glucose levels, which required the use of a glucose monitor and required her to eat a light snack or meal to control sugar spikes and drops. *Id.* Plaintiff gave Bank of America a doctor's note explaining Plaintiff needed to take meal breaks to eat and regulate her blood sugar levels. *Id.* ¶ 17. Bank of America disregarded the note and continued to deny Plaintiff her meal and rest periods. *Id.* ¶ 18. As a result, Plaintiff was often forced to interrupt business to check her blood glucose levels. *Id.* Plaintiff did so in places with little to no privacy, in view of co-workers and customers. *Id.*

After reporting her pregnancy, Plaintiff was frequently and condescendingly asked inappropriate questions about her health and her ability to continue working. *Id.* ¶ 19. Plaintiff's supervisor asked questions about her future with the company and told Plaintiff, "'[T]his isn't the right banking center for you.'" *Id.*

Plaintiff was forced to work overtime on multiple occasions. *Id.* ¶ 20. Plaintiff was compensated for her overtime hours, but she had no choice as to whether or not she took the overtime. *Id.* Plaintiff complained about this policy because her son, who has a genetic illness, required regular doctor's appointments. *Id.* Plaintiff's requests for time off for these appointments were denied. *Id.*

At one point, Plaintiff's son was rushed to the hospital; Plaintiff was barred from taking a personal or sick day to visit him. *Id.* When Plaintiff complained she had a right to visit her son and use her accrued paid time off ("PTO"), Plaintiff's supervisor became cross and told her she needed to stay to run the banking center. *Id.* Plaintiff called her supervisor's supervisor to complain, and Plaintiff was allowed to visit her son on that day. *Id.* ¶ 22. No further corrective or disciplinary action was taken as to Plaintiff's direct supervisor's policy of preventing usage of PTO. *Id.* Upon Plaintiff's return to work, her supervisor reprimanded Plaintiff for complaining above the supervisor's rank. *Id.* Plaintiff was told to "'never go over her head again.'" *Id.* ¶ 23.

Plaintiff went on maternity leave in August 2017. *Id.* ¶ 24. During that time, she injured

2

1   her back and transitioned to long-term disability leave, which would last until February 2018. *Id.*

2          On September 29, 2017, Plaintiff received a termination letter dated two days earlier. *Id.* ¶

3   25. On September 27, 2017, Plaintiff received her final pay deposit in the amount of $1,700. *Id.*

4   This did not reflect her unused sick leave, vacation time, and other PTO to which she was entitled.

5   *Id.* As a result of her termination, Plaintiff does not have access to medical benefits for herself or

6   her two children. *Id.*

7          Bank of America's practice of not permitting Plaintiff to take meal and rest breaks were

8   not limited to her; Plaintiff alleges she and others were not authorized or permitted to take meal

9   and rest breaks as required by California law. *Id.* ¶ 28. In addition, even after Plaintiff and others

10  were terminated or voluntarily resigned, Bank of America refused to pay wages owed and accrued

11  PTO. *Id.* ¶¶ 29-30.

**B.     Procedural History**

13         On January 25, 2018, Plaintiff filed this lawsuit in Alameda County Superior Court. *See*

14  Compl.; Summons, Dkt. No. 1-1. Plaintiff seeks to represent a putative Hourly Employee Class

15  defined as "[a]ll non-exempt employees who worked for Bank of America as Assistant Manager

16  or similar job titles, in the State of California at any time on or after the date that is four years prior

17  to when the Complaint was filed." Compl. ¶ 31. Plaintiff also seeks to represent a Terminated

18  Subclass of "[a]ll persons who are eligible for membership in the Class but who are no longer

19  employed by Defendant." *Id.*

20         Plaintiff brings a total of twenty causes of action on behalf of the proposed class and as an

21  individual. She asserts her first through eighth causes of action under the California Labor Code

22  on behalf of the proposed class: (1) failure to compensate for all hours worked, (2) failure to pay

23  minimum wage, (3) failure to provide meal and rest periods, (4) failure to provide adequate time

24  off, (5) failure to pay PTO on termination, (6) failure to pay final wages on time, (7) failure to

25  maintain accurate records, and (8) failure to furnish wage and hour statements. Compl. ¶¶ 34-109.

26  Plaintiff's twentieth cause of action asserts on behalf of the proposed class a claim under

27  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. *Id.* ¶¶

28  242-52.

Plaintiff asserts her ninth through eighteenth causes of action as an individual: (1) unlawful retaliation in violation of public policy; (2) wrongful termination in violation of public policy; (3) discrimination and harassment, Cal. Gov't Code § 12940 et seq.; (4) failure to prevent and investigate discrimination and harassment, Cal. Gov't Code § 12940 et seq.; (5) failure to provide reasonable accommodation, Cal. Gov't Code § 12940 et seq.; (6) failure to engage in interactive process, Cal. Gov't Code § 12940 et seq.; (7) violation of California Family Rights Act ("CFRA")/Family Medical Leave Act ("FMLA") rights; (8) intentional infliction of emotional distress; (9) negligent infliction of emotional distress; and (10) negligence, Cal. Civ. Code § 1714. Compl. ¶¶ 110-238.

Plaintiff's nineteenth cause of action is for "injunctive relief." *Id.* ¶¶ 239-41. Based on the related allegations, it appears Plaintiff asserts this cause of action as an individual; it does not contain allegations pertaining to the putative class. *See id.* ¶ 240 ("As a result of the unlawful and wrongful conduct alleged above, . . . Plaintiff has been and will continue to be irreparably harmed."); *id.* ¶ 241 ("Plaintiff has no adequate remedy at law for the injuries it has suffered, . . . and Plaintiff has a reasonable probability of success on the merits.").

On February 23, 2018, Bank of America removed the action to this Court. Not. of Removal, Dkt. No. 1. It filed the instant Motion on March 16, 2018.

## LEGAL STANDARDS

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.      Rule 12(f)**

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Immaterial matters are "those which ha[ve] no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation marks omitted). Impertinent matters "do not pertain, and are not necessary, to the issues in question." *Id.* (internal quotation marks

omitted).

The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). "Motions to strike are generally disfavored and 'should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.'" *Luxul Tech. Inc. v. NectarLux, LLC*, 2015 WL 4692571, at *3 (N.D. Cal. Aug. 6, 2015) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). The decision to grant a motion to strike ultimately lies within the discretion of the trial court. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271-72 (N.D. Cal. 2015) (citing *Whittlestone*, 618 F.3d at 973); *see Whittlestone*, 618 F.3d at 973 ("We review the district court's decision to strike matter pursuant to Federal Rule of Civil Procedure 12(f) for abuse of discretion." (internal quotation marks omitted)).

## REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201(b) permits courts to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Bank of America requests the Court take judicial notice of two documents: (1) a May 5, 2017 order entered in *Dawson v. Hitco Carbon Composites, Inc.*, Case No. 16-cv-7337-PSJ-FFM (C.D. Cal.); and (2) a statement of decision entered in a Santa Clara County Superior Court case, *Driscoll v. Granite Rock Co.*, 1-08-cv-103426 (Sept. 20, 2011). RJN, Exs. A & B, Dkt. No. 9-1. Plaintiff does not oppose the Request. *See* Opp'n. As these documents are judicially-noticeable public court filings, the Court **GRANTS** the Request.

## DISCUSSION

### A. First and Second Causes of Action

Plaintiff asserts her first cause of action – failure to compensate for all hours worked – under California Labor Code sections 200-204, 218, 223, 225.5, 226, 500, 510, 558, 1194, 1194.2,

1197, 1197.1, and 1198.  Compl. ¶¶ 34-45.  She asserts her second cause of action – failure to pay minimum wage – under Labor Code sections 223 and 1194.  Compl. ¶¶ 46-53.

"[T]o survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek."  *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014), *as amended* (Jan. 26, 2015).  "Federal courts considering claims under the California Labor Code apply the standard set forth in *Landers* . . . , which involved claims under the Federal Labor Standards Act ('FLSA')."  *Mie Yang v. Francesca's Collections, Inc.*, 2018 WL 984637, at *8 (N.D. Cal. Feb. 20, 2018); *see Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016) ("Although *Landers* discussed FLSA claims, its reasoning applies to California Labor Code claims as well."); *Freeman v. Zillow, Inc.*, 2015 WL 5179511, at *3 (C.D. Cal. Mar. 19, 2015) ("[T]he reasoning in *Landers* also applies to Plaintiff's overtime claim asserted under the California Labor Code because both California Labor Code § 510(a) and 29 U.S.C. § 207 require Plaintiff to have worked overtime in a given workweek to state a claim against Defendant for failure to pay overtime wages.").

The Complaint does not allege that Plaintiff or putative class members worked "in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek" to show they were entitled to overtime compensation.  Cal. Lab. Code § 510(a).  Plaintiff need not approximate the number of overtime hours she worked.[1]  *Landers*, 771 F.3d at 645 (acknowledging "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants").  But Plaintiff "should be able to allege facts demonstrating there was at least one workweek in which [she] worked in excess of forty hours and w[as] not paid overtime wages."  *Id.* at 646.  The Complaint lacks any such facts.

Plaintiff also alleges she "and Class Members routinely performed work 'off-the-clock,'"

---

[1] Plaintiff only cites pre-*Landers* cases in support of her argument that "it would be unfair to expect an employee deprived of [work] records to state more than the simple and clear allegation that [s]he did not receive all wage or overtime pay."  Opp'n at 5 (citing *Ambriz v. Coca Cola Co.*, 2013 WL 5947010 (N.D. Cal. Nov. 5, 2013), and *Yukming Chiu v. Citrix Sys., Inc.*, 2011 WL 6018278, at *4 (C.D. Cal. Nov. 23, 2011)).  To the extent these cases support Plaintiff's proposition, Plaintiff does not explain why this still holds true in light of *Landers*.

but Bank of America "failed to track their hours worked and refused to compensate Plaintiff and Class Members for some and/or all of the wages (including overtime wages) earned[.]" Compl. ¶¶ 41-42. There are no facts describing what this off-the-clock work entailed. *Cf. Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015) ("Boon identified tasks for which he was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week. Considering the facts in the light most favorable to Boon, his allegations satisfy the pleading requirements of *Landers* at this stage of the litigation."). Although Plaintiff alleges "Plaintiff's job duties included . . . [o]pening and closing the banking center, coaching associates, handling customer complaints, and managing vault reserves" (Compl. ¶ 1), she does not allege she performed these duties off-the-clock. On the contrary, Plaintiff's allegation that she "was forced to work overtime hours *for which she was compensated*, though she had no choice as to whether or not she took the overtime" indicates she was in fact paid for overtime work. *Id.* ¶ 20 (emphasis added). There are also no allegations that putative class members performed duties similar to Plaintiff's or that they performed such tasks off-the-clock as well.

Accordingly, the Court **DISMISSES** Plaintiff's first and second causes of action.

## B.    Third Cause of Action

Plaintiff brings her third cause of action – failure to provide meal and rest periods – under California Labor Code sections 226.7 and 512, and Industrial Welfare Commission ("IWC") Wage Orders. Compl. ¶¶ 54-72. Bank of America moves to dismiss this cause of action or, alternatively, to strike the class allegations. Mot. at 8-10. Bank of America also moves to dismiss or strike Plaintiff's request for attorneys' fees pursuant to Labor Code section 226.7. *Id.* at 24.

California "wage and hour claims are . . . governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 105 (2017), *as modified* (Mar. 20, 2017), *review denied* (June 21, 2017). The California Labor Code requires employers to give their nonexempt employees meal periods and rest periods during the workday. Cal. Lab. Code §§ 226.7, 512. Labor Code section 226.7(a) prohibits an employer from requiring an employee "to work during any meal or

8

rest period mandated by an applicable order of the Industrial Welfare Commission." Section 226.7 and IWC Wage Order No. 5-2001, operating in conjunction, require that an employer must authorize and permit all employees to take rest periods for "ten (10) minutes net rest time per four (4) hours" worked; "[h]owever, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours." Cal. Code Regs. tit. 8, § 11140(12). Additionally, Labor Code section 512(a) requires an employer to "provid[e] the employee with a meal period of not less than 30 minutes" for workdays lasting more than five hours, and provide two meal periods for workdays in excess of 10 hours, subject to waiver in certain circumstances.

### 1. Individual Allegations

Plaintiff does not state a claim for individual relief. Plaintiff's allegation that she was "consistently denied" her lunch or rest breaks is unsupported by facts sufficient to give this assertion plausibility. *See* Compl. ¶ 14. Even if Plaintiff's supervisor "often reprimanded [Plaintiff] when she would attempt to take a break or use the restroom" (*id.*), Plaintiff does not allege facts describing what precisely her supervisor said to allow the reasonable inference that the reprimands prevented Plaintiff from taking her break. Nor does the Complaint allege facts sufficient to show that Plaintiff was legally entitled to the breaks at issue.

Plaintiff also fails to offer sufficient facts to support her contention that "almost never received an uninterrupted meal period or rest break while working at the Albany banking center" in violation of California labor laws. *Id.* For instance, the Complaint does not identify who interrupted Plaintiff's breaks. *See id.* Plaintiff also does not offer any details as to what these interruptions entailed, nor does she describe what kind of work or tasks she performed during her breaks.

As such, the Complaint lacks sufficient facts describing these interruptions to support a reasonable inference that Bank of America required Plaintiff to perform work during her breaks. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012) ("[A]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks" but "[p]roof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay; employees

9

cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability.").

2. Class Allegations

Plaintiff alleges she and "Class Members were not consistently authorized or permitted to take meal and rest breaks as required by California law." Compl. ¶ 28. Bank of America "did not consistently provide the meal and rest period to which Plaintiff and Class Members were entitled because business needs took precedence, routinely interfering with their breaks." *Id.* "If Plaintiff and Class Members failed to address business needs at any time, including during breaks, they were subject to discipline, up to and including termination." *Id.*

These allegations, without more, fail to show Plaintiff is plausibly entitled to relief. Plaintiff does not describe these "business needs" or otherwise provide examples of the tasks putative class members performed during their breaks. Moreover, the fact that "business needs" interfered with breaks does not, in and of itself, suggest that Bank of America caused that interference. For instance, Plaintiff does not identify a Bank of America practice or policy that interfered with or prevented putative class members from taking breaks. Putative class members also could have elected to work through breaks on their own initiative. "[T]he employer is not obligated to police meal breaks and ensure no work thereafter is performed." *Brinker*, 53 Cal. 4th at 1040-41. Rather, "[b]ona fide relief from duty and the relinquishing of control satisfies the employer's obligations" such that "work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay under Wage Order No. 5, subdivision 11(B) and Labor Code section 226.7, subdivision (b)." *Id.* As such, Plaintiff fails to allege sufficient facts to give rise to the reasonable inference that Bank of America unlawfully prevented putative class members from taking meal and rest breaks to which they were legally entitled.

Plaintiff's remaining class allegations merely parrot the statutory or IWC language. *See id.* ¶¶ 60-64. This is insufficient; formulaic recitations do not support her meal and rest break claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's contention that "a complaint 'does not

10

need detailed factual allegations'" oversimplifies *Twombly*'s holding. Opp'n at 7 (quoting *Twombly*, 550 U.S. at 555). In fact, the Supreme Court held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted); *see Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."); *see also Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 941 (N.D. Cal. 2016) (plaintiff "is not required to plead his schedule in specific detail at the pleading stage, but he must at the very least make a plausible claim that he is entitled to relief because of the [d]efendants' misconduct").

### 3. Attorneys' Fees

Plaintiff alleges she "and Class Members are entitled to recover such amounts pursuant to California Labor Code section 226.7(b), plus interest thereon, attorneys' fees, and costs of suit." Compl. ¶¶ 70-71; *see id.* ¶ 72 ("[C]ertain Class Members are entitled to recover . . . attorneys' fees and costs . . . pursuant to statute.").

Bank of America argues attorneys' fees are not available under Labor Code section 226.7. Mot. at 24 (citing *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244 (2012)). As Plaintiff does not address this argument in her Opposition, she concedes this issue. *See Singh v. Baidwan*, 651 F. App'x 616, 618 (9th Cir. 2016) (district court did not abuse its discretion in dismissing plaintiff's claims for failure to prosecute where plaintiff failed to meaningfully respond arguments defendant raised in motion to dismiss); *Roy v. Contra Costa Cty.*, 2015 WL 5698743, at *3 n.7 (N.D. Cal. Sept. 29, 2015) ("When a non-moving party's opposition to a motion to dismiss fails to address the moving party's arguments regarding certain claims, the non-moving party has conceded that those claims fail."). Indeed, "[a]ttorneys' fees are not available on meal period claims under California Labor Code section 226.7." *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2014 WL 2199645, at *7 (N.D. Cal. May 27, 2014) (citing *Kirby*, 53 Cal. 4th at 1248).

4.    <u>Summary</u>

The Court finds Plaintiff fails to state a claim for failure to provide meal and rest periods. However, Bank of America does not explain why Plaintiff's class allegations related to her third cause of action or her request for attorneys' fees under Labor Code section 226.7 are "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f). Accordingly, the Court declines to strike the class allegations and the request for attorneys' fees. The Court instead **DISMISSES** Plaintiff's request for attorneys' fees pursuant this statute **WITHOUT LEAVE TO AMEND**. The remainder of Plaintiff's third cause of action is **DISMISSED WITH LEAVE TO AMEND**.

**C.    Fourth Cause of Action**

Bank of America moves to dismiss Plaintiff's fourth cause of action for failure to provide adequate time off pursuant to California Labor Code sections 551, 552, 554, and 558. Mot. at 10-11; *see* Compl. ¶¶ 73-78. Plaintiff does not oppose dismissal, but "request[s] the Court grant leave to amend this claim, so that Plaintiff[] may add additional facts to show that employees worked seven-day workweeks." Opp'n at 7.

The Court accordingly **DISMISSES** Plaintiff's Fourth Cause of Action. Bank of America argues dismissal should be without leave to amend because "Plaintiff has not satisfied Local Rule 10-1's requirement that she 'reproduce the entire proposed pleading.'" Reply at 5; *see* Civ. L.R. 10-1 ("Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference.").

"It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *see Eminence Capital*, 316 F.3d at 1052 ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."). The Court cannot find Plaintiff is precluded from seeking leave to amend simply because she has not offered an amended complaint in opposing Bank of America's Motion to Dismiss. Plaintiff indicates she can allege additional facts in support of her claim. The dismissal shall therefore be **WITH LEAVE TO AMEND**.

## C.     Fifth Cause of Action

Plaintiff's fifth cause of action alleges Bank of America failed "to pay PTO on termination" pursuant to California Labor Code section 227.3.  Compl. ¶¶ 79-86.

As is relevant here, Labor Code section 227.3 provides that

> whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.

"California law does not require an employer to provide its employees with any paid vacation"; however, "if an employer chooses to include paid vacation as a portion of the employee's compensation, the employer is not free to reclaim it after it has been earned."  *Minnick v. Auto. Creations, Inc.*, 13 Cal. App. 5th 1000, 1004 (2017), *review denied* (Nov. 15, 2017).  "[V]acation time 'is not a gratuity or a gift, but is, in effect, additional wages for services performed.'"  *Id.* (quoting *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982)).  Put another way, "vacation pay is simply a form of deferred compensation."  *Suastez*, 31 Cal. 3d at 780.

Plaintiff alleges Bank of America's PTO "policy constituted a vacation policy subject to California Labor Code section 227.3."  Compl. ¶¶ 29, 81.  Although "Plaintiff had accrued [] unused vacation time upon her termination" (*id.* ¶ 82), her final paycheck "did not reflect her unused sick leave, vacation time, and other paid time off to which she was entitled" (*id.* ¶ 25).

To show Plaintiff and putative class members are owed unpaid, vested vacation, sick, and PTO wages, Plaintiff must first establish they are entitled to such wages.  *See Owen v. Macy's, Inc.*, 175 Cal. App. 4th 462, 468 (2009) ("On its face, Labor Code section 227.3 does not require that an employer provide its employees with any paid vacation at all, contractually or as a matter of policy, as part of the employee compensation package.").  It is insufficient that Plaintiff simply alleges that Bank of America had a vacation policy.  *Andresen v. Int'l Paper Co.*, 2013 WL 2285338, at *3 (C.D. Cal. May 23, 2013).  Plaintiff does not allege facts regarding the specific policy or contact terms providing for paid vacation time, sick leave, or PTO; nor does Plaintiff

offer facts in support of her allegation that she accrued vacation time. *See* Cal. Lab. Code § 226.7 ("[A]ll vested vacation shall be paid to him as wages at his final rate *in accordance with such contract of employment or employer policy* respecting eligibility or time served. . . ." (emphasis added)); *Perez v. Performance Food Grp., Inc.*, 2016 WL 1161508, at *4 (N.D. Cal. Mar. 23, 2016) (dismissing section 227.3 claim where "there [was] no allegation that a contract of employment or employer policy provides for paid vacations, that Plaintiff or putative class members, in fact, accrued vacation time, and that vested vacation time was forfeited" (internal quotation marks omitted)). Accordingly, the Court **DISMISSES** Plaintiff's Fifth Cause of Action.

**D.      Sixth Cause of Action**

Plaintiff brings her sixth causes of action for failure to pay final wages on time under Labor Code sections 201 through 204. Compl. ¶¶ 87-94.

Under Labor Code section 201(a), "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." But if an employee does not "hav[e] a written contract for a definite period [and] quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter," subject to certain exceptions. Cal. Lab. Code § 202(a). Employees are awarded a penalty if an employer willfully fails to pay unpaid wages pursuant to sections 201 and 202, among others. Cal. Lab. Code § 203(a). "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs. tit. 8, § 13520; *see Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008) ("The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done.").

Plaintiff alleges Bank of America "willfully failed to pay all final wages on time" to voluntarily and involuntarily terminated employees. Compl. ¶¶ 90-92. To the extent Plaintiff's sixth cause of action is based on Bank of America's failure to pay vested vacation, sick, and PTO wages, her waiting time penalty claim fails. As discussed above, Plaintiff fails to allege sufficient facts showing she and putative class members are entitled to such pay.

Moreover, the Complaint does not contain facts alleging Bank of America acted willfully.

Merely alleging willfulness is insufficient to satisfy Rule 8; rather, Plaintiff must support that allegation with facts. *See Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1033 (C.D. Cal. 2017) (dismissing "causes of action for failure to pay wages timely upon discharge and during employment [where complaint] contain[ed] no description of what wages were due, when they were due, and when, if at all, they were paid"); *Clark v. EmCare, Inc.*, 2017 WL 1073342, at *6 (C.D. Cal. Mar. 21, 2017) (dismissing waiting time penalty claim where "[p]laintiff d[id] not provide any facts in support of her argument that [defendant] willfully failed to compensate her upon discharge" because "[a]llegations that repeat the statutory language are insufficient"). Because she does not, the Court **DISMISSES** her sixth cause of action.

**E.      Seventh Cause of Action**

Plaintiff's seventh cause of action alleges Bank of America failed to maintain accurate records as required by Labor Code sections 1174 and 1174.5. Compl. ¶¶ 95-100.

Labor Code section 1174 sets forth the duties of employers. Among other things, it requires employers to maintain "a record showing the names and addresses of all employees" and "payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments" for a minimum period of three years. Cal. Lab. Code § 1174(c)-(d). An employer who fails to maintain these records is subject to a $500 civil penalty. Cal. Lab. Code § 1174.5.

"Private rights of action for civil penalties under the Labor Code generally arise under the California Private Attorney General Act ('PAGA'), not under the Labor Code directly." *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 958 (N.D. Cal. 2016). PAGA allows private individuals to recover civil penalties previously assessed and collected only by the Labor and Workforce Development Agency ("LWDA"). Cal. Lab. Code § 2699; *see Lopez v. Friant & Assocs., LLC*, 15 Cal. App. 5th 773, 780 (2017), *review denied* (Jan. 10, 2018) ("PAGA is a type of qui tam statute that allows an aggrieved employee to recover civil penalties on behalf of the state.").

There is no private right of action under Labor Code section 1174. Because section 1174

does not provide for direct means of recovery by employees, a right of action to recover civil penalties under this statute only exists under PAGA. *See Noe v. Superior Court*, 237 Cal. App. 4th 316, 339 (2015) ("[W]here . . . a Labor Code provision provides for a 'civil penalty' and contains no language suggesting the penalty is recoverable directly by employees, no private right of action is available other than through a PAGA claim."); *Cleveland*, 200 F. Supp. 3d at 958 (finding no right of private action under Labor Code section 1174 and granting summary judgment in favor of defendant where plaintiff did not explicitly invoke PAGA and failed to submit evidence of exhaustion of PAGA's administrative remedies); *Cordell v. PICC Lines Plus LLC*, 2016 WL 4702654, at *10 (N.D. Cal. Sept. 8, 2016) ("Plaintiff . . . has no private right of action directly under the Labor Code for violation of section 1174(d)."); *Kemp v. Int'l Bus. Machines Corp.*, 2010 WL 4698490, at *3 (N.D. Cal. Nov. 8, 2010) (Labor Code section 1174 subject to PAGA's administrative requirements); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *8 (C.D. Cal. June 29, 2017) ("Plaintiff's section 1174(d) claim fails as a matter of law because it does not provide for a private cause of action"); *Dawson v. HITCO Carbon Composites, Inc.*, 2017 WL 7806618, at *7 (C.D. Cal. Jan. 20, 2017) (same); *Silva v. AvalonBay Communities, Inc.*, 2015 WL 11422302, at *10 (C.D. Cal. Oct. 8, 2015) ("There is no private right of action under [Labor Code section 1174].");  *Chang v. Biosuccess Biotech Co.*, 76 F. Supp. 3d 1022, 1050 (C.D. Cal. 2014) (claims brought under section 1174 subject to PAGA requirements).

Plaintiff does not assert a PAGA claim, but alleges she "will satisfy all applicable administrative requirements then amend to add a claim pursuant to [PAGA]." Compl. ¶ 10. This is insufficient. The operative Complaint does not in fact invoke PAGA, nor does it allege facts showing Plaintiff has complied with PAGA's administrative requirements. *See* Cal. Lab. Code § 2699.3 (setting forth administrative requirements employee must fulfill prior to filing civil action).

Plaintiff does not address the numerous cases finding section 1174 does not confer a private right of action. *See supra.* However, she cites *Carrillo v. Schneider Logistics, Inc.*, 823 F. Supp. 2d 1040 (C.D. Cal. Oct. 31, 2011), for the proposition that courts "unambiguously acknowledg[e] that a private right of action exists for violations of section 1174." Opp'n at 9. Not so. The *Carrillo* court did not explicitly find there is a private right of action under section

1174. *See Lopez v. Wendy's Int'l, Inc.*, 2012 WL 13014600, at *8 & n.50 (C.D. Cal. June 14, 2012) ("Some courts have assumed without comment that § 1174 provides a private right of action" (citing *Carrillo*, 823 F. Supp. 2d at 1044-45)). Moreover, the plaintiffs in *Carrillo* asserted a PAGA claim, which ostensibly provided them with a means of seeking penalties under section 1174. 823 F. Supp. 2d at 1042.

As Plaintiff cannot obtain civil penalties directly under section 1174 and because the Complaint does not invoke PAGA, this claim fails. Bank of America argues the Court should strike Plaintiff's section 1174 claim, but it does not explain why this claim is redundant, immaterial, impertinent, or scandalous. The Court therefore **DISMISSES** Plaintiff's seventh cause of action. The dismissal shall be **WITH LEAVE TO AMEND** provided that Plaintiff can, consistent with her Rule 11 obligations, allege facts showing compliance with PAGA.

### F. Eighth Cause of Action

Plaintiff's eighth cause of action asserts Bank of America failed to furnish wage and hour statements as required by Labor Code section 226. Compl. ¶¶ 101-09. "To establish a section 226 claim, the plaintiff must demonstrate both a violation of subsection 226(a) and an injury under subsection 226(e)." *Apodaca v. Costco Wholesale Corp.*, 675 F. App'x 663, 665 (9th Cir. 2017). Section 226(a) requires employers to provide itemized pay statements setting forth, among other things, the gross and net wages earned, the total hours worked and relevant pay period, the employee's name and identification or social security number, the employer's name address, and all applicable hourly rates. Cal. Lab. Code § 226(a). An employee who suffers an injury due to the employer's "knowing and intentional failure" to comply with section 226(a) is entitled to actual damages or a maximum penalty of $4,000. Cal. Lab. Code § 226(e)(1). An injury occurs "if the employer fails to provide a wage statement." Cal. Lab. Code § 226(e)(2)(A). An employee also suffers an injury "if the employer fails to provide accurate and complete information as required by any one or more of items" identified in section 226(a), and the employee cannot "promptly and easily determine [such information] from the wage statement alone." Cal. Lab. Code § 226(e)(2)(B).

In addition to actual damages set forth in section 226(e)(1), a violation of section 226(a)

also subjects an employer "to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation[.]" Cal. Lab. Code § 226.3.

Plaintiff alleges Bank of America "knowingly failed to provide Plaintiff and Class Members with timely and accurate wage and hour statements showing the inclusive dates of the pay period, gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity employing them, all applicable hourly rates in effect during each pay period, and the corresponding number of hours worked at each hourly rate." *Id.* ¶ 106. In fact, Bank of America did not provide accurate wage statements because it "did not employ a timekeeping system that actually tracked all hours their workers worked." *Id.* Plaintiff contends she and putative class members "suffered monetary damages" because they "could not determine whether they were paid properly and/or did not receive pay for all hours worked." *Id.* ¶ 107.

### 1. Knowledge and Intent

Bank of America argues Plaintiff fails to allege facts that its alleged violation was knowing and intentional. Mot. at 14. For purposes of section 226, "a 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." Cal. Lab. Code § 226(e)(3). Relevant factors include "whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section." *Id.* Thus, "[a] violation exists if the employer 'knew that facts existed that brought its actions or omissions within the provisions of the statute.'" *Ming-Hsiang Kao v. Joy Holiday*, 12 Cal. App. 5th 947, 961 (2017) (quoting *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014)) (brackets omitted). "[A] mistake of law . . . is not excused under the statute mandating itemized wage statements." *Id.* at 962.

"[T]o satisfy the 'knowing and intentional' requirement, a plaintiff 'need only plead that defendants knew of the facts underlying the alleged violation, and need not plead that defendants had knowledge that their alleged actions were unlawful.'" *Perez v. Performance Food Grp., Inc.*, 2016 WL 1161508, at *3 (N.D. Cal. Mar. 23, 2016) (quoting *Contreras v. Performance Food Grp., Inc.*, 2014 WL 6481365, at *3 (N.D. Cal. Nov. 18, 2014)); *see Ming-Hsiang Kao*, 12 Cal.

18

App. 5th at 962.

Plaintiff alleges Bank of America "knowingly failed to provide . . . accurate wage and hour statements[.]" Compl. ¶ 106. Courts generally find this type of allegation sufficient. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Perez*, 2016 WL 1161508, at *3 (allegation that defendants knew wage statements did not comply with section 226 was adequate to withstand motion to dismiss); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 811 (N.D. Cal. 2015) ("A simple allegation that an employer's failure to provide accurate wage statements was 'knowing and intentional' suffices to state a claim under section 226." (citing *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012) ("[T]he FAC expressly states that [defendant]'s failure to comply with § 226 was 'knowing and intentional.' [] Because mental states may be alleged generally, [p]laintiffs have adequately alleged 'knowing and intentional' conduct. . . .'"))); *Laumea v. Performance Food Grp., Inc.*, 2014 WL 12695804, at *7 (C.D. Cal. Nov. 5, 2014) (allegation that "[d]efendant 'intentionally and willfully' failed to provide accurate wage statements" sufficient because "[p]laintiff is entitled to all reasonable inferences, . . . and it is reasonable to infer that Defendant knew both that rates of pay should be included on wage statements as well as that employees were paid incentive and shift differential payments that were not calculated into the employees' rates of pay").

2.     <u>Injury</u>

Bank of America also contends Plaintiff fails to set forth adequate facts to support her allegation that she and putative class members were injured as a result Bank of America's alleged conduct. Mot. at 14-15. The Court agrees. The Complaint merely recites section 226(a) in an attempt to allege a violation thereof. As with the claims discussed above, Plaintiff offers only conclusions; she fails to assert facts to support these allegations. For instance, although Plaintiff alleges Bank of America did not have a timekeeping system that "actually tracked" hours worked, the Complaint does not offer facts describing the system or explaining why Bank of America's method of tracking time led to inaccurate reporting. Plaintiff's allegation that she and putative class members "suffered monetary damages" because they "could not determine whether they

were paid properly and/or did not receive pay for all hours worked" (Compl. ¶ 107) is not supported by sufficient facts.[2]

Plaintiff also does not allege facts showing how Bank of America's wage statements prohibited her and putative class members from promptly and easily determining whether they were paid the correct amount. The mere deprivation of one of the itemized requirements in section 226(a) does not, in and of itself, constitute a cognizable injury. *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011). "By employing the term 'suffering injury,' the statute requires that an employee may not recover for violations of section 226, subdivision (a) unless he or she demonstrates an injury arising from the missing information." *Id.* (citation omitted). "[T]he 'deprivation of that information,' standing alone is not a cognizable injury." *Id.* Section 226(a)'s legislative history provides an example:

> [I]f an employer provided separate information about all straight time hours and separate information about all overtime hours, and the addition of the two equaled the total hours worked by the employee, he/she would not suffer injury because the employer did not have a category on the pay stub that was labeled "total hours". Or, if an employer provided information about the balance due to a worker after all deductions, instead of showing this amount as "net wages" on the pay stub, the worker would not suffer injury.

S.B. 1255 Bill Analysis, Assembly Comm. on Labor and Employment at 8, June 20, 2012; *see Milligan v. Am. Airlines, Inc.*, 577 F. App'x 718, 719 (9th Cir. 2014) ("Performing simple math to determine § 226(a)-required information from figures on the wage statement does not constitute injury." (citing *Price*, 192 Cal. App. 4th at 1144)). Because the Complaint does not set forth facts explaining how the wage statements did not allow Plaintiff and putative class members to

---

[2] Plaintiff contends she does "not need to state the precise theory of liability pled" and that "'the cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. . . . Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise only to one claim of relief." Opp'n at 10 (quoting *Bay Cities Paving & Grading, Inc. v. Lawyer's Mutual Ins. Co.*, 5 Cal. 4th 854, 860 & n.1 (1993)). It is unclear how this relates to the question of whether the Complaint adequately states a section 226 claim. Moreover, *Bay Cities* is inapposite. In that case, the California Supreme Court considered whether the plaintiff could assert one or two causes of action for a single injury covered by an insurance policy. *Bay Cities*, 5 Cal. 4th at 860. The *Bay Cities* Court was not faced with the question of whether the plaintiff's cause of action was adequately pled under *Iqbal* or *Twombly*.

"promptly and easily determine" their proper pay, the Court finds dismissal is appropriate. *See De La Torre v. Am. Red Cross*, 2013 WL 5573101, at *6 (C.D. Cal. Oct. 9, 2013) (dismissing section 226 claim where plaintiff "simply alleged that the amount she was paid was incorrect" but "d[id] not properly allege that her paycheck was such that she could not 'promptly and easily determine' from the wage statement the amount of gross wages or net wages actually paid to her during the pay periods at issue").

### 3. Summary

For these reasons, the Court **DISMISSES** Plaintiff's eighth cause of action.[3]

## G. Ninth Cause of Action

Plaintiff brings an individual cause of action for unlawful retaliation in violation of public policy in violation of California Labor Code sections 98.6, 230, 232, 232.5, and 1102.5.[4]  Compl. ¶¶ 110-24.

### 1. Applicable Rules

As is relevant here, Labor Code section 98.6(a) provides that

> [a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any

---

[3] Bank of America does not dispute Plaintiff's ability to seek remedies under Labor Code section 226.3, and so the Court declines to address the issue. It notes, however, that section 226.3 does not contain language indicating the civil penalty is recoverable by individuals. Thus, "no private right of action is available other than through a PAGA claim." *Noe*, 237 Cal. App. 4th at 336; *see Yadira v. Fernandez*, 2011 WL 2434043, at *3 (N.D. Cal. June 14, 2011) (finding "plaintiff is entitled to bring a private claim for violation of § 226.3" under PAGA); *Pedroza v. PetSmart, Inc.*, 2012 WL 9506073, at *6 (C.D. Cal. June 14, 2012) (agreeing with *Yadira* that "[p]laintiff can assert a claim for PAGA penalties under § 226.3"); *accord Garibaldi v. Bank of Am. Corp.*, 2014 WL 172284, at *7 (N.D. Cal. Jan. 15, 2014) (dismissing section 226.3 claim on ground that "[s]ection 226.3 is not one of the Labor Code sections PAGA encompasses" (citing Cal. Lab. Code § 2699.5)). As discussed above, Plaintiff's Complaint does not invoke PAGA.

[4] Although unchallenged by Bank of America, it is unclear why Plaintiff brings her ninth cause of action under Labor Code section 230, which prohibits employers from discriminating against an employee who takes time off to serve on a jury or an employee who is a victim of a crime, domestic violence, sexual assault, or stalking and must participate in a related judicial proceeding. Plaintiff does not allege any facts suggesting she had jury duty or was a survivor of a crime, domestic violence, sexual assault, or stalking, let alone that Bank of America discriminated against her as a result.
    It is also unclear why Plaintiff brings this cause of action under Labor Code section 232, as this statute prohibits employers from preventing employees from disclosing the amount of their wages. Plaintiff does not allege Bank of America prohibited her from disclosing her wages, or that she in fact did so.

> employee . . . because the employee . . . engaged in any conduct delineated in this chapter . . . or because the employee . . . filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that he or she is owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee . . . on behalf of himself, herself, or others of any rights afforded him or her.

However, section 98.6(a) only "prohibit[s] terminations for conduct otherwise protected by the Labor Code." *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 87 (2004). In other words, an employee "must allege her termination occurred because she exercised a right protected by the Labor Code." *Id.*

Labor Code section 1102.5 protects employees from whistleblower retaliation. It provides, in part:

> (a) An employer . . . shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

> (b) An employer . . . shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

> (c) An employer . . . shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

Cal. Lab. Code § 1102.5(a)-(c). Plaintiff does not specify under which provision(s) of section 1102.5 she brings this cause of action. *See* Compl.

A prima facie case of retaliation under sections 98.6 and 1102.5 requires a plaintiff to show: "(1) he engaged in protected activity; (2) his employer thereafter subjected him to an adverse employment action; and (3) a causal link between the two." *Turner v. City & Cty. of San Francisco*, 892 F. Supp. 2d 1188, 1199 (N.D. Cal. 2012) (internal quotation marks omitted); *Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 969 (N.D. Cal. 2010) (applying elements to sections 98.6 and 1102.5); *Alabado v. French Concepts, Inc.*, 2016 WL 5929247, at *10 (C.D. Cal. May 2, 2016) (same).

### 2. Analysis

Plaintiff alleges Bank of America "terminated Plaintiff's employment in violation of public policy" and "retaliated against Plaintiff because Plaintiff has a protected characteristic and/or engaged in protected activity." Compl. ¶ 119. "Plaintiff is informed and believes . . . that [Bank of America's] conduct . . . was substantially motivated by Plaintiff's opposition to and/or reporting of the actual and/or perceived violations[.]" *Id.* ¶ 120. Because the Complaint does not identify what these "protected characteristics" or protected activities are, these vague allegations cannot withstand a motion to dismiss.

Plaintiff argues she "engaged in protected activities when she left on maternity leave and reported the meal and rest break violations" and "was subject to adverse employment actions when she was denied the right to use her accrued time off to care for her son, denied meal and rest breaks, forced to work overtime, and eventually terminated. Opp'n at 12 (citing Compl. ¶¶ 14-25). But the Complaint does not contain allegations indicating that these particular activities form the basis of Plaintiff's retaliation claim.[5] This alone is grounds for dismissal.

---

[5] To the extent this claim is predicated on Plaintiff's maternity leave, neither party addresses whether maternity leave is a protected activity under the California Labor Code. *See also Grinzi*, 120 Cal. App. 4th at 87. Although the Complaint invokes California's Pregnancy Disability Leave Law ("PDLL"), Cal. Gov't Code § 12945, Plaintiff offers no argument as to why section 98.6 covers a violation of the PDLL, which is codified under the Government Code, not the Labor Code.

Assuming, arguendo, Plaintiff had sufficiently alleged the basis of her retaliation claim, the Complaint lacks adequate facts that connect the protected activities to the adverse action. Plaintiff argues she "established a causal link between the protected activities and [Bank of America]'s adverse employment actions through temporal proximity." Opp'n at 12. She further contends "[e]vidence of causal link became even more clear when Suarez's supervisor told her to 'never go over her head again' after Suarez complained to upper management about the violations." *Id.* (citing Compl. ¶ 12).

"[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (analyzing timing of alleged retaliation under Title VII). However, timing alone is not indicative of causation; "rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression." *Id.* (internal quotation marks omitted); *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (citations omitted)). Indeed, the Ninth Circuit "ha[s] . . . made clear that a specified time period cannot be a mechanically applied criterion" and "caution[s] against analyzing temporal proximity without regard to its factual setting." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009).

Plaintiff does not allege the dates on which she was forced to work overtime or was prevented from taking her meal and rest breaks or PTO; nor does are there facts about the date she complained to her supervisor's supervisor.[6] The Complaint therefore lacks sufficient detail to allow the reasonable inference that Bank of America retaliated against Plaintiff based solely on the temporal proximity between these activities and the adverse action. *See Moss v. U.S. Secret Serv.*,

---

[6] The only facts regarding timing concern Plaintiff's maternity leave. *See* Compl. ¶¶ 24-25. As Plaintiff does not adequately allege her pregnancy forms the basis for this claim, the Court declines to consider whether the timing between her maternity leave and the alleged retaliation is, on its own, sufficient to allow a reasonable inference of causation.

572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

Finally, there are no facts to suggest that Plaintiff filed a complaint with the Labor Commissioner, *see* Cal. Lab. Code § 98.6, or disclosed information to a government or law enforcement agency about any ostensible violations, *see* Cal. Lab. Code § 1102.5. Plaintiff alleges she "timely filed a charge of discrimination, failure to investigate discrimination and retaliation against Defendants with the California Department of Fair Employment and Housing ('DFEH')" and received a right to sue letter on January 10, 2018. Compl. ¶ 9. This claim fails to the extent it is predicated on the DFEH charge. Plaintiff does not indicate when she filed the DFEH charge, i.e., before or after she was terminated. As such, there are no facts in the Complaint to suggest Bank of America retaliated against Plaintiff because she filed the DFEH charge.

Accordingly, the Court **DISMISSES** Plaintiff's ninth cause of action.[7]

## H. Tenth and Eleventh Causes of Action

Plaintiff's tenth cause of action asserts an individual *Tameny* claim for wrongful termination in violation of public policy. Compl. ¶¶ 125-32; *see Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980). Her eleventh cause of action asserts a violation of FEHA. Compl. ¶¶ 133-52; *see* Cal. Gov't Code § 12940 et seq.

A wrongful discharge claim may be premised on a FEHA violation. *Galarpe v. United Airlines, Inc.*, 2018 WL 348161, at *3 (N.D. Cal. Jan. 10, 2018) (citing *Stevenson v. Superior Court*, 16 Cal. 4th 880 (1997)). The Court therefore considers whether Plaintiff states a FEHA claim, then turns to whether she states a claim for wrongful termination. *See id.* ("[W]hether Plaintiff has adequately pleaded a wrongful termination claim is coincident with whether he has

_____

[7] Plaintiff also argues that in light of her allegations, "the burden is now shifted to Defendant to respond with a legitimate, nondiscriminatory reason for its actions" and that "[e]ven if Defendant attempts to offer a legitimate reason for its actions, Plaintiff has established that any such reason is 'pretext' or cover-up for unlawful retaliation." Opp'n at 12. Assuming without deciding the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), applies here, Plaintiff's argument is premature at the motion to dismiss stage and is more appropriate for summary judgment.

adequately pleaded a violation of FEHA.").

1.    Eleventh Cause of Action

California's FEHA prohibits an employer from discriminating on the basis of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status."  Cal. Gov't Code § 12940(a).  To state a prima facie case of discrimination under FEHA, a plaintiff must show

> "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."

*Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1067-68 (2017) (quoting *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 355 (2000)).  In addition, a plaintiff must demonstrate that the "illegitimate criterion was a substantial factor in the particular employment decision."  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (internal quotation marks omitted).  "Requiring the plaintiff to show that discrimination was a substantial motivating factor, rather than simply a motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision."  *Id.*

Plaintiff alleges the following in her Complaint:

> 140.    According to California Government Code section 12926(r)(1)(A), "sex" discrimination includes discrimination based on "[p]regnancy or medical conditions related to pregnancy."

> 141.    As alleged above, Plaintiff was entitled to protection under FEHA because Plaintiff is an employee who has a protected characteristic.

> 142.    As such, Plaintiff was entitled to FEHA's protection pursuant to California Government Code sections 12940 *et seq.*

Bank of America's "discriminatory and harassing actions against Plaintiff, . . . including her termination of employment, constituted unlawful discrimination in employment on account of the fact that Plaintiff was an employee that has a protected characteristic, in violation of California Government Code section 12940."  Compl. ¶ 146.  Plaintiff alleges, on information and belief, that

1   Bank of America's "conduct . . . was substantially motivated by the fact that Plaintiff has a

2   protected characteristic." *Id.* ¶ 147.

3              a.    *Protected Characteristic and Substantially Motivating Factor*

4        As with her ninth cause of action, the Complaint does not make clear what Plaintiff

5   contends her protected characteristic is. Although she alleges she was pregnant, suffered from

6   gestational diabetes, and suffered a back injury, it is unclear which of these conditions form the

7   basis for Plaintiff's FEHA claim. *See also* Opp'n at 13 ("Suarez, who was diagnosed with

8   Gestational Diabetes, a back injury, and eventually went on maternity leave, does have a protected

9   characteristic. (Compl. ¶¶ 16-24)."). In any event, Plaintiff fails to offer sufficient facts showing

10  her unspecified "protected characteristic" was a substantially motivating reason for the alleged

11  adverse action. Plaintiff contends she sufficiently alleges causation based on "the short period of

12  time between Plaintiff's illness and injury, Defendant's discriminatory and harassing treatment of

13  Plaintiff, and the supervisor's inappropriate comments[.]" Opp'n at 14-15. The Court disagrees.

14       First, because Plaintiff fails to specifically identify her "illness and injury" forming the

15  basis for her FEHA claim, the Court cannot consider how much time passed between these events

16  and the allegedly adverse action.

17       Second, as discussed above, Plaintiff does not allege when these inappropriate comments

18  occurred and what was said. *See supra*; Compl. ¶ 19. As such, her description that these

19  comments were "inappropriate" is conclusory and unsupported by sufficient facts.

20       Third, Plaintiff argues her supervisor's refusal to use PTO or sick leave is an adverse

21  action. *See* Opp'n at 14 (Plaintiff "was not only subject to inappropriate comments, but also to

22  adverse employment actions when she was denied time off and eventually terminated after taking

23  disability leave."). But Plaintiff does not allege sufficient facts tying this action to her protected

24  characteristic, whether pregnancy, gestational diabetes, or back injury.

25       Plaintiff relies solely on temporal proximity to allege causation; there are no other facts to

26  show Bank of America's actions were substantially motivated by Plaintiff's unspecified protected

27  characteristic. Plaintiff's allegation that Bank of America's "discriminatory and harassing actions

28  against Plaintiff . . . constituted unlawful discrimination in employment on account of the fact that

Plaintiff was an employee that has a protected characteristic" is therefore insufficient to show causation. *See Banawis-Olila v. World Courier Ground, Inc.*, 2016 WL 2957131, at *5 (N.D. Cal. May 23, 2016) ("The conclusory allegation that 'the employer has discriminated against me and harassed me because of my gender or sex (female),' without more, is insufficient to state a claim for sex discrimination."); *cf. Achal*, 114 F. Supp. 3d at 798 (plaintiff's allegation that employer did not conduct investigation into reason for termination "gives rise to a plausible inference, at least for purposes of this motion [to dismiss], that the proffered reason was pretextual, and that his disability was at least a substantial motivating factor in his termination"); *Alsup v. U.S. Bancorp*, 2015 WL 6163453, at *6 (E.D. Cal. Oct. 19, 2015) (causation sufficiently alleged where complaint contained language from termination letter, which ostensibly showed the employer "w[as] entirely motivated by [the plaintiff's] disability: it considered her mental health conditions too troublesome, not worth the effort.").

        b.    *Allegations of Harassment*

Under FEHA,

> [h]arassment includes but is not limited to:
> (A)    Verbal harassment, e.g., epithets, derogatory comments or slurs on a basis enumerated in the Act;
> (B)    Physical harassment, e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act;
> (C)    Visual forms of harassment, e.g., derogatory posters, cartoons, or drawings on a basis enumerated in the Act; or
> (D)    Sexual favors, e.g., unwanted sexual advances, which condition an employment benefit upon an exchange of sexual favors.

Cal. Code Regs. tit. 2, § 11019(b). "Unlike discrimination claims, harassment 'consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.'" *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (quoting *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998)); *see Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009), *as modified* (Feb. 10, 2010) ("[H]arassment often does not involve any official exercise of delegated power on behalf of the employer."). Put another way, "'harassment consists of . . . conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for

other personal motives.'" *Reno*, 18 Cal. 4th at 645-46 (1998) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996)).

Bank of America argues Plaintiff's allegations of "[c]omments about work-related matters are not actionable as 'harassment' under FEHA." Mot. at 17. Plaintiff alleges the following conduct by Bank of America:

- "Defendant disregarded the doctor's note [explaining Plaintiff needed to take breaks to eat in order to regulate her blood sugar levels] and continued its policy of denying Plaintiff meal and rest periods. Because of this policy, Plaintiff was often forced to interrupt business to check her blood glucose levels, in spaces with limited-to-no privacy. Consequently, co-workers and customers often witnessed Plaintiff drawing blood to check her blood glucose levels." Compl. ¶ 18.

- "After reporting her pregnancy, Plaintiff was frequently asked inappropriate questions about her health and her ability to continue working in a condescending manner. Plaintiff's supervisor asked questions about her future with the company, and once expressed that 'this isn't the right banking center for you,' to the Plaintiff." *Id.* ¶ 19.

- "Multiple times, Plaintiff was forced to work overtime hours for which she was compensated, though she had no choice as to whether or not she took the overtime." *Id.* ¶ 20.

- "When Plaintiff complained that she had a right to visit her son and use her paid time off, her supervisor became cross and told her she needed to stay to run the banking center." *Id.* ¶ 21.

- "Plaintiff called her supervisor's supervisor to complain about Plaintiff's supervisor's policies of barring usage of paid time off." *Id.* ¶ 22. "When Plaintiff returned to work, her supervisor's reprimanded her for complaining above the supervisor's rank and [Plaintiff] was told to 'never go over her head again." *Id.* ¶ 23.

- "Plaintiff received a termination letter on September 29th, 2017[.]" *Id.* ¶ 25.

With the exception of her termination, Plaintiff does not specify which of these actions, if any, constitute harassment. *See id.* ¶ 146 ("Defendants' discriminatory and harassing actions against

Plaintiff, as alleged above, including her termination of employment, constituted unlawful discrimination . . . .").  Indeed, several of the allegations suggest much of this conduct is unrelated to Plaintiff's medical conditions.  For instance, Plaintiff fails to connect her assertions that she was forced to work overtime and was reprimanded for complaining to her supervisor's supervisor to the same conditions.[8]

Plaintiff fails to allege sufficient facts showing the comments she received amount to harassment.  "[A]n employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature."  *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283 (2006).  "[W]hen the harassing conduct is not severe in the extreme, more than a few isolated incidents must have occurred to prove a claim based on working conditions."  *Id.*

Plaintiff offers scant details about the allegedly harassing comments.  For instance, although Plaintiff describes questions about her health as "inappropriate," she does not explain why this is so.  Because Plaintiff largely does not describe what was said, there are no facts showing these comments or questions were so severe or pervasive so as to objectively amount to harassment.  *See id.* ("[A]nnoying or 'merely offensive' comments in the workplace are not actionable, [but] conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment is unlawful. . . .").  Moreover, while Plaintiff alleges these questions and comments occurred "frequently," there are no facts to support this contention.  The only example Plaintiff provides is her supervisor's comment that "'this isn't the right banking center for you.'"  Compl. ¶ 19.  As the Court cannot evaluate the severity of other comments made to Plaintiff, this single incident, without more, is insufficient to show harassment.  *See Lyle*, 38 Cal. 4th at 283.  In short, the Complaint does not contain facts sufficient to show Plaintiff suffered

---

[8] The only conduct which could be related to Plaintiff's pregnancy or gestational diabetes are Bank of America's denial of meal and rest breaks so Plaintiff could check her blood glucose levels and refusal to provide Plaintiff with a private space to so (Compl. ¶ 18); her supervisor's "condescending" comments about Plaintiff's health and ability to continue working (*id.* ¶ 19); and her termination (*id.* ¶ 25).  The parties do not discuss whether the alleged conduct related to her blood glucose testing constitutes harassment; the Court therefore does not consider it now.  The parties instead focus on Plaintiff's supervisor's comments and her termination.  Mot. at 18; Opp'n at 14.

United States District Court
Northern District of California

harassment as defined under FEHA. *Cf. Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 704 (N.D. Cal. 2014) (finding plaintiff sufficiently alleged harassment based on gender was severe or pervasive based on allegations that supervisor criticized plaintiff's work habits, company van, hours, work quantity, attitude, and opinions; made disparaging remarks about nearly every aspect of her work product; found fault with her commute times, customer service, and hours worked; recorded the number of times she contacted the IT department for aid; and twice made derogatory statements to her about her choice of clothing); *Rico v. Jones Lang LaSalle Americas, Inc.*, 2014 WL 1512190, at *3 (C.D. Cal. Apr. 16, 2014) (finding plaintiff had alleged "sufficiently severe" "pattern of harassing conduct" where plaintiff alleged her supervisor "condescendingly questioned whether [p]laintiff had been promoted too soon, attempted to demote her, expressed frustration that [p]laintiff was taking maternity leave, [] suggested that [p]laintiff needed to work 'extra time' before taking her leave[,] . . . questioned [p]laintiff's ability to do the job before she returned from maternity leave, gave [p]laintiff an unwarranted negative performance review upon her return, and prevented her from transferring to [a different] office"; "taken together, [these allegations] suggest at least a possibility [of] a pattern of harassing conduct toward [p]laintiff based on her pregnancy").

According, the Court cannot find Plaintiff has alleged sufficient facts showing the alleged conduct amounted to harassment under FEHA.

### c. *Summary*

For these reasons, the Court finds Plaintiff fails to state a claim for discrimination and harassment under FEHA and **DISMISSES** Plaintiff's eleventh cause of action.

### 2. Tenth Cause of Action

"'When an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions.'" *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 898 (2008) (quoting *Tameny*, 27 Cal. 3d at 170) (brackets omitted). "[O]ne of the appropriate sources to which a court may look in determining whether a discharge or termination violates the state's public policy is a statutory declaration of public policy adopted by the Legislature." *Shaw v.*

*Superior Court*, 2 Cal. 5th 983, 1004 (2017) (citing *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1095 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998), and *Stevenson*, 16 Cal. 4th at 888). "[F]or a policy to support a wrongful discharge claim, it must be: (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *Stevenson*, 16 Cal. 4th at 894.

Plaintiff alleges Bank of America "terminated Plaintiff's employment based upon Plaintiff having a protected characteristic and/or engaging in a protected activity." Compl. ¶ 127. The Complaint does not identify a specific public policy at issue here. To the extent Plaintiff predicates her wrongful termination claim on a violation of FEHA, this claim also fails because, as discussed above, Plaintiff has not sufficiently pleaded a FEHA claim. *See Galarpe v. United Airlines, Inc.*, 2018 WL 348161, at *3 (N.D. Cal. Jan. 10, 2018) ("[W]hether [p]laintiff has adequately pleaded a wrongful termination claim is coincident with whether he has adequately pleaded a violation of FEHA."). "To the extent that Plaintiff seeks to base her claim on violation of another statute or provision, Plaintiff must allege that in her claim." *Dauth v. Convenience Retailers, LLC*, 2013 WL 5340396, at *3 (N.D. Cal. Sept. 24, 2013); *see Asnaashari v. PNY Techs., Inc.*, 2013 WL 2403605, at *2 (N.D. Cal. May 31, 2013) ("In order to state . . . a claim [for wrongful termination in violation of public policy], plaintiff must identify the specific public policy implicated by defendant's actions.").

The Court therefore **DISMISSES** Plaintiff's tenth cause of action.

## I.     Twelfth Cause of Action

Plaintiff's twelfth cause of action alleges Bank of America failed to prevent and investigate harassment and discrimination against Plaintiff in violation of FEHA. Compl. ¶¶ 153-69. Plaintiff alleges she "complained about the harassment and discrimination to one [her] managers" but "Defendants did not investigate Plaintiff's complaints or take action to stop the harassment and discrimination." *Id.* ¶ 162.

FEHA requires an employer to "take all reasonable steps to prevent harassment from

occurring." Cal. Gov't Code § 12940(j)(1). It also makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k).

Because the Court finds Plaintiff has not stated a claim for harassment or discrimination under FEHA, *see supra*, it necessarily follows that Plaintiff fails to state a failure to prevent claim under the same statute. *See Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1314 (2015), *as modified on denial of reh'g* (Mar. 24, 2015) ("'[C]ourts have required a finding of actual discrimination or harassment under FEHA before a plaintiff may prevail under section 12940, subdivision (k).'" (quoting *Carter v. Cal. Dep't of Veterans Affairs*, 38 Cal. 4th 914, 925 n.4 (2006) (citing *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280 (1998)); *Trujillo*, 63 Cal. App. 4th at 289 ("Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented."). The Court accordingly **DISMISSES** Plaintiff's twelfth cause of action.

## J. Thirteenth and Fourteenth Causes of Action

Plaintiff asserts her thirteenth cause of action as an individual and alleges Bank of America failed to provide her with a reasonable accommodation for her disability as required by FEHA. Compl. ¶¶ 170-80. Plaintiff's fourteenth cause of action alleges Bank of America failed to engage in FEHA's interactive process. *Id.* ¶¶ 181-90.

### 1. Applicable Law

FEHA requires employers "to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't Code § 12940(m)(1). "The elements of a failure to accommodate claim are: '(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.'" *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015) (quoting *Scotch v. Art Inst. of California-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 1010 (2009)). "An employer's failure to provide reasonable accommodation is a violation of the statute even in the absence of an adverse employment action." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 442 (2007).

FEHA also requires employers "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). To prevail on a failure to participate claim, a plaintiff must show she (1) has a disability covered by FEHA and known to the defendant; (2) she requested the defendant make a reasonable accommodation for her disability so she would be able to perform the essential job requirements; (3) she was willing to participate in an interactive process to determine whether a reasonable accommodation could be made so she could perform the essential job requirements; and (4) the defendant failed to participate in a timely good faith interactive process to determine whether reasonable accommodation could be made. *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 61–62 (2006).

   2.   <u>Analysis</u>

Plaintiff alleges she "has suffered from a disability pursuant to California Government Code section 12940 et seq." Compl. ¶ 172; *see id.* ¶ 183 ("Plaintiff is entitled to [FEHA's] protection . . . because Plaintiff has a disability."). She asserts "Defendants were aware of Plaintiff's disability." *Id.* ¶ 173; *see id.* ¶ 184. However, Bank of America "failed to provide reasonable accommodations with respect to Plaintiff's needs based on her disability" (*id.* ¶ 174) and "failed to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations for Plaintiff's disability, if any" (*id.* ¶ 185).

Bank of America argues Plaintiff fails to allege that she needed or requested a particular accommodation and that she made any requests to engage in the interactive process. Mot. at 19-20. Rather than pointing to allegations showing she made such requests, Plaintiff contends "the question of whether Plaintiff's attempt to seek the accommodation of time off work due to injury was reasonable is factual in nature" and "is a quintessential question for the jury since it cannot be determined at the pleading state 'whether Plaintiff's requested accommodations were reasonable, . . . or constituted an undue hardship to the employer[.]'" Opp'n at 15 (quoting *Bagatti v. Dep't of Rehab.*, 97 Cal. App. 4th 344, 369 (2002)).

The Complaint does not contain allegations showing Plaintiff informed Bank of America that she had diabetes, let alone that she required an accommodation thereto. Even if the reasonableness of an accommodation is ultimately for a jury to decide, this does not relieve Plaintiff of her threshold responsibility to allege facts showing she requested an accommodation and sought to engage in the interactive process so as to trigger Bank of America's obligations under FEHA.

"Where a necessary accommodation is obvious, where the employee requests a specific and available reasonable accommodation that the employer fails to provide, or where an employer participates in a good faith interactive process and identifies a reasonable accommodation but fails to provide it, a plaintiff may sue under section 12940(m)." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 983 (2008). On the other hand,

> [s]ection 12940(n), which requires proof of failure to engage in the interactive process, is the appropriate cause of action where the employee is unable to identify a specific, available reasonable accommodation while in the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process.

*Id.* Failure to accommodate and failure to engage in the interactive process claims both require the plaintiff to take the first step and notify her employer of her disability and need for accommodation. *See King*, 152 Cal. App. 4th at 443 ("The employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." (internal quotation marks omitted)); *Gelfo*, 140 Cal. App. 4th at 62 n.22 ("Typically, an applicant or employee triggers the employer's obligation to participate in the interactive process by requesting an accommodation."); *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1252 (2008), *as modified on denial of reh'g* (Aug. 28, 2008) ("The employee bears the burden of giving the employer notice of his or her disability.").

Plaintiff does not allege any facts suggesting a reasonable accommodation was obvious, or that she took the first step to notify her employer of her disability and need for accommodation. Plaintiff alleges she "was issued a doctor's note explaining that Plaintiff needed to take her meal

periods and eat in order to regulate her blood sugar levels and passed that note along to Defendant in a timely manner." Compl. ¶ 17. Plaintiff does not allege this note explicitly stated that she suffered from diabetes, that she needed to check her blood sugar levels, or what checking her blood sugar levels entailed. Plaintiff does not attach the note to her Complaint.

Other courts have found that this type of note is insufficient to show an employer knew of an employee's disability and was required to accommodate it. For instance, the plaintiff in *Avila* brought a failure to accommodate claim against his employer. 165 Cal. App. 4th at 1252-53. The California Court of Appeal held that two "Documentation of Medical Impairment" forms from the plaintiff's healthcare provider did not provide sufficient information to put the employer on notice that the plaintiff suffered from a disability under FEHA. *Id.* at 1249. "Reading the . . . forms most favorably to plaintiff, the forms communicated only that plaintiff was unable to work on four work days . . . due to an unspecified condition, and that plaintiff was hospitalized for three days." *Id.* Because "[t]he forms did not specify that plaintiff suffered from pancreatitis or any other condition that qualified as a disability under [Government Code] section 12926, subdivision (k)[,]" this was insufficient to put the employer "on notice that [the] plaintiff was suffering from a qualifying disability." *Id.*

Similarly, in *King*, the plaintiff sued his employer for failing to accommodate his disability. 152 Cal. App. 4th at 432. The plaintiff's physician "released him to perform his regular duties and regular hours." *Id.* at 443. The trial court found "[t]he physician's note did not contain any specific restrictions, and plaintiff never requested nor provided to UPS a doctor's note limiting the number of hours he could work in a day. [] Nor did plaintiff ever inform his supervisor, [manager], or human resources that he was not able to work the hours he had previously worked." *Id.* The California Court of Appeal held this note failed to establish the plaintiff "communicated his distress to his supervisors or made the kind of specific request for a modified work schedule required to trigger an employer's duty to provide accommodation." *Id.* at 444.

While *Avila* and *King* evaluated facts presented on summary judgment and did not consider the sufficiency of the plaintiffs' allegations, their analyses are instructive. It is not

36

enough that Plaintiff notified Bank of America that she needed to regulate her blood glucose levels. Rather, *Avila* demonstrates that the notice must identify a condition constituting a disability; in other words, Plaintiff must have notified Bank of America of the condition causing her to monitor her blood glucose levels. *King* shows Plaintiff must affirmatively request an accommodation before FEHA requires Bank of America to provide her with one.

As discussed above, Plaintiff does not allege facts showing this to be the case. Not only does the Complaint not contain allegations showing that Bank of America knew Plaintiff suffered from diabetes, the Complaint is also devoid of facts showing that Plaintiff informed Bank of America that her diabetes required a particular accommodation. *See Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 922-23 (9th Cir. 2017) ("To prevail on a claim . . . for failure to engage in the interactive process, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." (quoting *Scotch*, 173 Cal. App. 4th at 1018)).

There are even fewer facts regarding Plaintiff's back injury. Plaintiff alleges only that "in August of 2017, she injured her back and transitioned to long-term disability leave which would last until February 2018." Compl. ¶ 24. But there are no allegations showing Bank of America knew of Plaintiff's back injury. Although Plaintiff took long-term disability leave, she does not allege facts indicating Bank of America knew the reason behind this.

"[T]he interactive process compelled by FEHA requires flexibility by both the employer and employee, and that no magic words are required to necessitate accommodation." *King*, 152 Cal. App. 4th at 444. Courts recognize that "[e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 262 (2000) (internal quotation marks omitted). But it was nevertheless Plaintiff's "responsibility to understand . . . her own physical . . . condition well enough to present [Bank of America] at the earliest opportunity with a concise list of restrictions which must be met to accommodate" her disability. *King*, 152 Cal. App. 4th at 443. She cannot expect "clairvoyance" from Bank of America to guess what her disability is, her reasonable needs as a result of said disability, or her desire to engage in the

interactive process. *Id.*; *see Department of Fair Empl't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 743 (9th Cir. 2011) (plaintiff failed to bring to employer's "attention any possible accommodations that it had not considered"; as such, "[a]ny failure to interact adequately, therefore, was caused by [plaintiff] and, as a result, [employer could] not be held liable"); *Goos v. Shell Oil Co.*, 2010 WL 1526284, at *12 (N.D. Cal. Apr. 15, 2010), *aff'd*, 451 F. App'x 700 (9th Cir. 2011) ("An employer cannot accommodate an employee's disability if it does not know how that disability affects the employee.").

Because the Complaint lacks any allegations that Plaintiff informed Bank of America of her disability, requested an accommodation, and sought to engage in the interactive process, the Court **DISMISSES** Plaintiff's thirteenth and fourteenth causes of action. *See Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 911 (N.D. Cal. 2015) (plaintiff sufficiently stated failure to accommodate claim where plaintiff alleged he "requested 'accommodation in the form of occasional temporary time off and/or work from home'" which "triggered an affirmative duty for [d]efendant to provide reasonable accommodation"); *Abdul-Haqq v. Kaiser Found. Hosps.*, 2015 WL 335863, at *3 (N.D. Cal. Jan. 23, 2015) (dismissing failure to accommodate claim where complaint "d[id] not describe the substance of plaintiff's request—namely, the nature of the requested accommodation").

## K.      Fifteenth Cause of Action

Plaintiff brings her fifteenth cause of action as an individual under the FMLA and CFRA. *See* Compl. ¶¶ 191-217.

### 1.      Applicable Law

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 2614(a)). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights. 29 U.S.C. § 2615(a)(1); *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

Prohibited acts under the FMLA fall into two general categories: (1) "interference" claims, and (2) "retaliation/discrimination" claims. 29 U.S.C. § 2615(a)(1) (interference); 29 U.S.C. § 2615(a)(2) (retaliation/discrimination). "By their plain meaning, the anti-retaliation or anti-discrimination provisions [of the FMLA] do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under § 2615(a)(1), the provision governing 'Interference [with the] Exercise of rights.'" *Bachelder*, 259 F.3d at 1124. Accordingly, "when a plaintiff alleges retaliation for exercise of FMLA rights, that claim is properly analyzed as an interference claim under section 2615(a)(1)." *Rivera v. FedEx Corp.*, 2013 WL 6672401, at *6 (N.D. Cal. Dec. 18, 2013); *see Bachelder*, 259 F.3d at 1122-23 (using protected leave as a negative factor in employment decisions violates the FMLA because "attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights").

CFRA is California's counterpart to the FMLA. *Richey v. AutoNation, Inc.*, 60 Cal. 4th 909, 919 (2015); Cal. Gov't Code § 12945.2. FMLA and CFRA claims may be analyzed together, "[s]ince CFRA adopts the language of the FMLA and California state courts have held that the same standards apply." *Liu v. Amway Corp.*, 347 F.3d 1125, 1132 n.4 (9th Cir. 2003) (citing *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 261 (2001)).

### 2. Analysis

Plaintiff alleges she "was eligible for leave under the CFRA, FMLA, and/or ADA" and "fulfilled her notice requirements under the Acts."[9] Compl. ¶¶ 205-06; *see id.* ¶ 209 (Plaintiff "was on leave for pregnancy and for a back injury"). She further contends Bank of America "interfered with Plaintiff taking leave and/or retaliated against and discriminated against Plaintiff for exercising the right to leave." *Id.* ¶ 192; *see id.* ¶ 208 (Bank of America "violated the CFRA, FMLA, ADA, and FEHA by taking adverse actions against Plaintiff because she had taken and/or

---

[9] Although Plaintiff titles this claim "Violation of CFRA/FMLA Rights," *see* Compl. at 35, she also refers to violations of the Americans with Disabilities Act and FEHA, *see id.* ¶¶ 193, 205, 207-08. The parties only address whether Plaintiff states a claim under the FMLA and CFRA. *See* Mot. at 20-21; Opp'n at 10. Accordingly, the Court does not consider whether Plaintiff states an ADA or FEHA claim based on her leave.

had requested to take leave.").  Plaintiff alleges "the leave she took was a factor in [Bank of America]'s election to take adverse employment action against her, including but not limited to: limiting the assignments she received, limiting her work schedule, and subjecting her to stricter scrutiny than others, and more severe punishment than others experienced." *Id.* ¶ 210.  Thus, "the acts of [Bank of America] in criticizing Plaintiff's performance because Plaintiff took leave or requested to take leave is an unlawful employment practice in violation of the CFRA . . . because [Bank of America] interfered with Plaintiff's right to take CFRA/FMLA [leave]." *Id.* ¶ 213.

Bank of America argues these allegations are conclusory and do not show it terminated Plaintiff because she requested protected leave or denied Plaintiff's request for leave.  Mot. at 20. Plaintiff maintains she "sufficiently alleges that Defendant harassed and discriminated against her due to her disability."  Opp'n at 16.

Not so.  As an initial matter, Plaintiff predicates this cause of action on her taking leave, not her disability.  Moreover, Plaintiff's allegations that Bank of America limited her assignments and work schedule and subjected her to "stricter scrutiny" and more severe punishment are wholly unsupported by facts.  The Complaint lacks any facts showing, for instance, when and how Bank of America limited her assignments and work schedule.  Plaintiff also does not explain what "stricter scrutiny" entailed or describe any instances where she was subjected to such scrutiny; nor does she offer facts showing how others were criticized or punished in comparison.  Accordingly, the Court finds Plaintiff fails to sufficiently allege Bank of America retaliated or interfered with her rights under the FMLA or CFRA.  The Court therefore **DISMISSES** Plaintiff's fifteenth cause of action.

## L.    Sixteenth Cause of Action

Plaintiff brings her sixteenth cause of action for intentional infliction of emotional distress ("IIED") as an individual.  Compl. ¶¶ 219-27.

### 1.    Applicable Law

To prevail on an IIED claim under California law, a plaintiff must show "there has been (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff has suffered severe or

extreme emotional distress; and (3) the defendant's outrageous conduct was the actual and proximate causation of the emotional distress." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1265 (2017), *as modified* (Apr. 19, 2017), *review denied* (June 28, 2017). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Lawler*, 704 F.3d at 1245 (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not create liability under an IIED claim. *Hughes*, 46 Cal. 4th at 1051. In addition, this conduct "must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* (internal quotation marks omitted). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id.* (internal quotation marks and edits omitted).

      2.   <u>Analysis</u>

Plaintiff alleges "[t]he conduct complained of herein above was outside the conduct expected to exist in the workplace, was intentional and done for the purpose of causing Plaintiff[] to suffer humiliation, mental anguish, and emotional and physical distress." Compl. ¶ 220. As a result, "Plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health." *Id.* ¶ 221.

      a.   *Preemption*

Bank of America argues the Workers' Compensation Act ("WCA") preempts this claim. Mot. at 21. "The basic purpose of the [WCA] is to compensate for the disabled worker's diminished ability to compete in the open labor market, not to compensate every work-related injury." *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 753 (1992). With a few exceptions not relevant here, the WCA is "the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment[.]" Cal. Lab. Code § 3601(a). It specifically provides compensation for "[a] psychiatric injury . . . if it is a mental disorder which causes disability or need for medical treatment, and it is diagnosed pursuant to procedures" set forth in Labor Code section 139.2. Cal. Lab. Code § 3208.3(a); *see Livitsanos*, 2 Cal. 4th at 753 ("[C]ompensable injuries may be physical, emotional or both, so long as they are

disabling.").

"An employer's intentional misconduct in connection with actions that are a normal part of the employment relationship, such as demotions and criticism of work practices, resulting in emotional injury is considered to be encompassed within the compensation bargain."  *Singh v. Southland Stone, U.S.A., Inc.*, 186 Cal. App. 4th 338, 367 (2010); *see Torres v. Parkhouse Tire Serv., Inc.*, 26 Cal. 4th 995, 1008 (2001) ("To be within the scope of employment, the incident giving rise to the injury must be an outgrowth of the employment, the risk of injury must be inherent in the workplace, or typical of or broadly incidental to the employer's enterprise."). Intentional misconduct falls within the scope of the WCA "even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'"  *Singh*, 186 Cal. App. 4th at 367 (quoting *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987)).

However, the California Supreme Court has recognized exceptions to the preemption rule for "conduct that contravenes fundamental public policy" and that "exceeds the risks inherent in the employment relationship."  *Miklosy*, 44 Cal. 4th at 903 (internal quotation marks omitted).  For instance, "[i]f an employer terminates an employment relationship for a reason that contravenes some fundamental public policy, then the employer breaches a general duty imposed by law upon all employers and the employee's remedy therefore sounds in tort."  *Id.* at 900.

Plaintiff argues "the allegation surrounding [her] emotional distress claims stem from the same facts constituting her disability discrimination/harassment and retaliation claims."  Opp'n at 17.  "Because allegations relating to unlawful discrimination and retaliation, which are not risks of injury inherent in the workplace, establish Plaintiff's emotional distress claims, workers' compensation exclusivity does not apply."  *Id.*  As discussed above, Plaintiff does not adequately allege FEHA, CFRA, or FMLA harassment or retaliation claims.  *See supra.*  As such, the Court cannot find Plaintiff has adequately alleged Bank of America's conduct "contravene[d] some fundamental public policy" based on these statutes.  *See Miklosy*, 44 Cal. 4th at 900.  Plaintiff does not offer any other facts or argument to show Bank of America's conduct exceeded the bounds of the normal employment relationship.  On the contrary, the allegations in the Complaint show

"[t]he alleged wrongful conduct . . . occurred at the worksite, in the normal course of the employer-employee relationship"; as such, the WCA is Plaintiff's sole remedy. *Id.* at 902. Based on the current allegations, the WCA preempts Plaintiff's IIED claim.

### b. *Failure to State a Claim*

Bank of America argues, in the alternative, that Plaintiff otherwise fails to state a claim for IIED. The Court agrees.

First, there are no facts that Bank of America's conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Lawler*, 704 F.3d at 1245 (internal quotation marks omitted). Plaintiff contends the following conduct "would lead an average community member to exclaim, 'Outrageous'": the denial of meal and rest breaks, which allegedly forced Plaintiff to deal with health issues in front of co-workers and customers; her supervisor's inappropriate and condescending comments about her health and ability to continue working; the refusal to allow Plaintiff to use PTO to care for her son; and her termination. Opp'n at 17-18. Plaintiff is mistaken.

There are no facts suggesting the refusal to allow Plaintiff to use her PTO or her termination amount to anything more than a personnel decision. *See Janken*, 46 Cal. App. 4th at 80 ("Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."). In general, termination "is insufficient to state an IIED claim." *Mugno v. Hazel Hawkins Mem'l Hosp.*, 2017 WL 2289222, at *16 (N.D. Cal. May 25, 2017). A claim for IIED based on termination is possible, however, "where the behavior goes beyond the act of termination." *Macias v. Levy Premium Foodservices Ltd. P'ship*, 2015 WL 12747900, at *3 (C.D. Cal. Feb. 12, 2015). Plaintiff alleges no facts showing this to be the case.

Moreover, Plaintiff's supervisor's comments may have been rude or insensitive, but "[c]onduct which exhibits mere rudeness and insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress." *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1158 (9th Cir. 2000).

43

Assuming, arguendo, that requiring Plaintiff to check her blood sugar levels in front of other amounts to extreme and outrageous conduct, the Court cannot find Plaintiff has adequately alleged facts showing Plaintiff's distress can be attributed to Bank of America.  As discussed above, Plaintiff fails to allege facts showing that Plaintiff requested an accommodation for her diabetes, such as a private room, so as to trigger Bank of America's obligation to provide her with one.  Indeed, the Complaint does not even allege Plaintiff informed Bank of America that she needed to check her blood sugar or what she needed to accomplish this.  At most, the Complaint alleges only that Plaintiff "needed to . . . eat in order to regulate her blood sugar levels."  Compl. ¶ 17.  Absent such allegations, the fact that Plaintiff checked her blood sugar levels in front of others cannot be attributed to Bank of America.  Put another way, there are no facts suggesting Bank of America forced Plaintiff to publicly monitor her blood sugar levels because it denied her privacy to do so; there are no facts suggesting that denial ever occurred.

Second, the Complaint lacks facts showing that Plaintiff suffered severe or extreme emotional distress.  "[E]motional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry."  *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1376 (2010).  Plaintiff alleges she "suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health."  Compl. ¶ 221.  There are no details as to how Plaintiff's emotional distress manifested.  This is grounds for dismissal.  *See Delk v. Ocwen Fin. Corp.*, 2017 WL 3605219, at *11 (N.D. Cal. Aug. 21, 2017) (finding "conclusory allegations of 'mental anguish and severe emotional distress'" insufficient to state IIED claim).  Indeed, courts have rejected IIED claims that offer greater details about the plaintiff's emotional suffering than what Plaintiff offers here.  *See, e.g.*, *Hughes*, 46 Cal. 4th at 1051 ("[P]laintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of defendant's comments to her . . . do not comprise emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." (internal quotation marks and brackets omitted)); *Wong*, 189 Cal. App. 4th at 1376 (holding "minimal showing" that plaintiff lost sleep, had stomach upset, and generalized anxiety did not reflect severe emotional

44

distress).  Plaintiff's conclusory allegations fall short of the California Supreme Court's "high bar for what can constitute severe distress."  *Wong*, 189 Cal. App. 4th at 1376.

### 3.   Summary

For these reasons, the Court **DISMISSES** Plaintiff's sixteenth cause of action.  The dismissal shall be **WITH LEAVE TO AMEND** provided Plaintiff can, in accordance with her Rule 11 obligations, allege facts that show her IIED is not preempted by the WCA and that Bank of America engaged in outrageous conduct.

## M.   Seventeenth and Eighteenth Causes of Action

Plaintiff's seventeenth cause of action alleges negligent infliction of emotional distress ("NIED").  Compl. ¶¶ 228-33.  Her eighteenth cause of action asserts a negligence claim.  *Id.* ¶¶ 234-38.  She purports to bring both causes of action pursuant to California Civil Code section 1714.  *Id.* at 41.

### 1.   Applicable Law[10]

"The general rule in California is that 'everyone is responsible for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person.'"  *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) (quoting Cal. Civ. Code § 1714(a)) (edits omitted).  To state a negligence claim under California law, "a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury."  *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (internal quotation marks and brackets omitted).

---

[10] California courts have long held that "there is no independent tort of negligent infliction of emotional distress.  The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) (internal citation omitted); *see Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993) ("Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply.  The existence of a duty is a question of law."); *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) ("We have repeatedly recognized that '[t]he negligent causing of emotional distress is not an independent tort, but the tort of negligence.'" (quoting *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989)); *Wong*, 189 Cal. App. 4th at 1377 ("A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach, causation, and damages apply.").  Bank of America does not argue dismissal of this cause of action is appropriate on this ground.  *See* Mot.; Reply.

2.     Analysis

With respect to her NIED claim, Plaintiff alleges "[i]n the alternative, if said conduct of [Bank of America] . . . was not intentional it was negligent." Compl. ¶ 229.  As to her negligence claim, Plaintiff merely quotes Civil Code section 1714(a) and recites the elements for negligence. *See id.* ¶¶ 235-36.  Plaintiff alleges that "[a]s a proximate result of [Bank of America's] wrongful conduct, as alleged herein, Plaintiff has suffered, and continue[s] to suffer, losses in earning and other employment benefits[.]" *Id.* ¶ 237.

The parties' briefing concerning this claim is cursory and undeveloped.  Nevertheless, the Court finds Plaintiff does not allege sufficient facts to state a negligence claim.

a.     *Failure to State a Claim*

Plaintiff's vague reference to "said conduct" does not provide Bank of America with sufficient notice what conduct gives rise to Plaintiff's negligence claim.  This alone is grounds for dismissal.  *See Prince v. Fremont Police Dep't*, 2013 WL 3157925, at *4 (N.D. Cal. June 20, 2013) ("[I]t is unclear what particular conduct by [d]efendants, if any, is alleged to give rise to a claim for negligence. Because [p]laintiffs' vague and conclusory allegations fail to give [d]efendants 'fair notice of what the . . . claim is and the grounds upon which it rests,' [p]laintiffs' negligence claim is not 'plausible' at this juncture." (quoting *Twombly*, 550 U.S. at 555) (edits in *Prince*)).  Although Plaintiff argues her "negligence claim arises from the same facts constituting her discrimination, harassment, and retaliation claims" (Opp'n at 18), this is not evident from the face of the Complaint.  Finally, Plaintiff does not allege any facts explaining why Bank of America owed her a duty.  Dismissal is therefore appropriate.

b.     *New Right-Exclusive Remedy Doctrine*

The new right-exclusive remedy doctrine "provides that where a statute *creates* new rights and obligations not previously existing in the common law, the express statutory remedy is deemed to be the exclusive remedy available for statutory violations, unless it is inadequate." *Brewer v. Premier Golf Props.*, 168 Cal. App. 4th 1243, 1252 (2008) (emphasis in original; internal quotation marks omitted).  "But where a statutory remedy is provided for a preexisting common law right, the newer remedy is generally considered to be cumulative, and the older

remedy may be pursued at the plaintiff's election." *Rojo v. Kliger*, 52 Cal. 3d 65, 79 (1990); *see Freund v. Nycomed Amersham*, 347 F.3d 752, 760 (9th Cir. 2003) (quoting *Rojo*, 52 Cal. 3d at 79).

Bank of America argues "Plaintiff's claim for negligence is [] preempted by the California Labor Code pursuant to the New [] Right[-]Exclusive Remedy doctrine." Mot. at 21 (citing without analyzing *Spragin v. McDonald's USA, LLC*, 2011 WL 13217960, at *2 (C.D. Cal. Jan. 20, 2011)). Bank of America does not elaborate on this contention, nor does it identify specific provisions of the Labor Code. *See id.*; Reply. Plaintiff's only response to this argument is that "Defendant has not provided convincing authority that Plaintiff's negligence cause of action is barred by the workers' compensation exclusivity doctrine." Opp'n at 18. Bank of America does not argue the WCA preempts the negligence claim. *See* Mot. at 21.

Plaintiff clarifies her "negligence claim arises from the same facts constituting her discrimination, harassment, and retaliation claims[.]" Opp'n at 18. Plaintiff brings these claims not just under the Labor Code, but under FEHA and CFRA, which are codified in the California Government Code, and the FMLA, a federal statute. *See* Compl. ¶¶ 110-218. Bank of America does not discuss whether the new right-exclusive remedy doctrine also preempts Plaintiff's negligence claim to the extent it is predicated on FEHA, CFRA, and the FMLA. *See* Reply.

As the Court finds Plaintiff does not adequately allege a negligence claim, and in light of the parties' sparse analysis of this issue, the Court declines to decide whether this claim is preempted by the new rule-exclusive remedy doctrine at this time.

3. <u>Summary</u>

Because Plaintiff fails to allege sufficient facts to support a claim of negligence, the Court **DISMISSES** seventeenth and nineteenth causes of action.

**O. Nineteenth Cause of Action**

Plaintiff titles her nineteenth cause of action "injunctive relief." Compl. at 42. Plaintiff alleges that "[a]s a result of the unlawful and wrongful conduct alleged above, in the absence of injunctive relief prohibiting [Bank of America] from discriminating, denying meal and rest periods, and failing to maintain accurate records, among other affronts, Plaintiff has and will

47

continue to be irreparably harmed." *Id.* ¶ 240. Plaintiff also seeks injunctive relief in her prayer for relief. *Id.* at 45.

Courts have held injunctive relief is a form of relief, not an independent claim. *See Di Loreto v. Chase Manhattan Mortg. Corp.*, 2017 WL 5569834, at *6 (N.D. Cal. Nov. 20, 2017) ("Plaintiffs may pursue declaratory and injunctive relief as remedies, not independent claims."); *Capodiece v. Wells Fargo Bank*, 2013 WL 1962310, at *7 (N.D. Cal. May 10, 2013) ("[D]eclaratory and injunctive relief cannot be independent claims—they are types of remedies. If and when plaintiffs seek leave to amend their complaint, declaratory and injunctive relief may be sought as part of their prayer for relief—not as independent claims for relief."); *Kennedy Funding, Inc. v. Chapman*, 2010 WL 2528729, at *11 (N.D. Cal. June 18, 2010) ("[I]njunctive relief [is] more appropriately characterized as form[] of relief than independent claim[.]").

To the extent Plaintiff seeks an injunction as part of her prayer for relief, she fails to show she has standing to do so. "[A] former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364-65 (2011)). It is undisputed that Plaintiff no longer works for Bank of America, and the Complaint is devoid of any facts suggesting she intends to seek re-employment. As such, Plaintiff fails to demonstrate the existence of a threat of real and immediate future harm such that she has a personal need for injunctive relief. *See Bayer*, 861 F.3d at 865 ("Because [plaintiff] has neither shown that he is reasonably likely to be subjected once again to the conduct alleged as the basis for his claim nor shown that he can reasonably be expected to benefit from the injunctive relief he seeks, we conclude his claim for injunctive relief is moot."); *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1138 (N.D. Cal. 2017) ("As a former employee who alleges a past wrong . . . [plaintiff] does not have standing to seek prospective injunctive relief because he has failed to show a sufficient likelihood that he will personally be harmed by [defendants'] practices again in the future."); *Achal*, 114 F. Supp. 3d at 818 (dismissing request for injunctive relief where employee was no longer employed by defendant and did not allege facts indicating he intended to return to work for

48

defendant in the future, thus failing to establish threat of real or imminent future harm).

Accordingly, the Court **DISMISSES** Plaintiff's nineteenth cause of action.[11]  The dismissal shall be **WITHOUT LEAVE TO AMEND** to assert it as an individual claim.  Plaintiff may, however, seek injunctive relief as part of her prayer for relief and can, consistent with her Rule 11 obligations, allege facts showing an imminent threat of future harm.

**P.    Twentieth Cause of Action**

Plaintiff's twentieth and final cause of action asserts a UCL violation for unfair business practices.  Compl. ¶¶ 242-52.  She brings this claim as an individual and on behalf of the putative class.  *Id.* ¶ 243.  Plaintiff predicates her UCL claim on Bank of America's "violations of the Employment Laws and Regulations as alleged herein" as these "constitute[] an unfair business practice" in violation of the UCL.  *Id.* ¶ 244.

"[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations ... as unlawful practices, independently actionable under section 17200, et seq. and subject to the distinct remedies provided thereunder."  *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  Where a plaintiff cannot state a claim under the "borrowed" law, he or she cannot state a UCL claim either.  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal.App.4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law.").

Plaintiff's UCL claim "rise[s] and fall[s] with the substantive causes of action already discussed."  *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 6294472, at *18 (N.D.Cal. Dec. 15, 2011).  Because the Court has dismissed each of the underlying causes of action, it also **DISMISSES** Plaintiff's UCL claim.  The dismissal shall be **WITH LEAVE TO AMEND** provided Plaintiff can allege sufficient facts in support of her other claims.

**Q.    Motion to Strike**

Bank of America "moves to dismiss and/or strike" references to class members; class

---

[11] Bank of America argues, for the first time on Reply, this cause of action should be stricken. Reply at 14; *see* Mot. at 23 (arguing injunctive relief claim should be dismissed without leave to amend).  The Court declines to do so.

allegations (Compl. at 2); the statement "on behalf of herself, all others similarly situated, and the general public" (*id.* ¶¶ 27-33); and Plaintiff's request for class certification (*id.*, Prayer for Relief). Mot. at 6. Bank of America makes no attempt to discuss why these parts of the Complaint should be stricken pursuant to Rule 12(f). Accordingly, the Court **DENIES** the Motion as it is brought pursuant to Rule 12(f).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Bank of America's Motion. The Motion is granted insofar as it seeks to dismiss Plaintiff's claims; it is denied to the extent it seeks to strike the class allegations. Plaintiff's request for attorneys' fees pursuant to Labor Code section 226 and independent claim for injunctive relief are dismissed **WITHOUT LEAVE TO AMEND**; the dismissal shall be **WITH LEAVE TO AMEND** in all other respects. Plaintiff shall file any amended complaint no later than June 20, 2018.

**IT IS SO ORDERED.**

Dated: May 30, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge