UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARIANNA SUAREZ,

Plaintiff,

v.

BANK OF AMERICA CORPORATION,

Defendant.

Case No. 18-cv-01202-MEJ

**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 19

## INTRODUCTION

Plaintiff Arianna Suarez ("Plaintiff") brings this putative class action against her former employer, Defendant Bank of America, N.A. ("Defendant" or "Bank of America"). The Court previously dismissed Plaintiff's initial Complaint with leave to amend, and now pending before the Court is Defendant's Motion to Dismiss and/or Strike her First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (f). Mot., Dkt. No. 19. Plaintiff filed an Opposition (Dkt. No. 21) and Bank of America filed a Reply (Dkt. No. 22). The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 9, 2018 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for the following reasons.

## BACKGROUND

Plaintiff began working for Bank of America as an Assistant Manager in 2003. First Am. Compl. ("FAC") ¶¶ 1, 13, Dkt. No. 16. Her duties included opening and closing the banking center, coaching associates, handling customer complaints, and managing vault reserves. *Id.* ¶ 1.

## A.     Meal and Rest Periods

Plaintiff and her co-workers worked more than five hours per shift, yet were frequently denied timely meal and rest periods. *Id.* ¶ 35.  For instance, in the last week of June 2015, the bank was understaffed and Plaintiff was ordered to work as a teller during the entire shift. *Id.* Plaintiff's Branch Manager, Vanessa Jerez-Lee, told her she could not take a break from serving as a teller unless someone took over for her, yet no one was available to cover for her during the entire shift. *Id.*  Plaintiff observed the same thing happen to co-workers. *Id.*  Although she tried to indicate on her records that she had not been able to take a meal period for the day, her supervisor prevented her from doing so. *Id.* ¶ 15.  Plaintiff was therefore never compensated in the form of a meal premium for missing her meal periods. *Id.*

Jerez-Lee also interrupted meal and rest breaks. *Id.* ¶ 36.  Jerez-Lee would ask Plaintiff to help customers with withdrawals and deposits (i.e., serve as a teller) during her breaks and, on at least one occasion during the last week of June 2015, asked Plaintiff to enter the break room and tell a co-worker who was on break to come serve as a teller now. *Id.*  Plaintiff also was forced to start a meal break after five hours of work and a rest break after four hours of work because Jerez-Lee forced her to continue performing duties as a teller. *Id.*  These late breaks also happened at least once during the last week of June 2015. *Id.*  The late or missed meal breaks also occurred in the last pay period of July 2017 when Plaintiff and her co-workers were told they could not start their breaks until others were available to cover for them. *Id.*

## B.     Overtime

Plaintiff worked more than eight hours in a day and more than forty hours in a week. *Id.* ¶ 33.  This happened on many occasions, including the last week of October 2015 and the first week of November 2015, when she arrived at 9:00 a.m. and clocked out at 7:00 p.m. or 7:30 p.m. *Id.* During the same time, Plaintiff worked more than 40 hours a week, working approximately 45 hours per week at Defendant's Albany Branch. *Id.*  Managers were aware this was happening, but prohibited Plaintiff and her co-workers from logging overtime hours. *Id.*  Plaintiff observed managers instructing employees not to log overtime: managers sent emails stating that overtime was not allowed, said the same at team meetings and during conference calls, and signs were

posted in the restroom saying overtime is prohibited unless approved in advance. *Id.* Jerez-Lee told Plaintiff and other employees that overtime would not be permitted. *Id.* During the last week of October 2015 and the first week of November 2015, Jerez-Lee stated that overtime must not be logged. *Id.*

Plaintiff observed her co-workers experience the same work conditions. *Id.* ¶ 34. She personally observed a fellow hourly employee, a male Relationship Banker, performing work off-the-clock. *Id.* Plaintiff and the male Relationship Banker had mandatory closing duties such as filing customer papers internally, closing the bank vault, searching the banking center to ensure no customer information was left out, locking and closing recycling bins, and waiting for other employees to finish their closing duties. *Id.* Plaintiff was required to complete her closing duties, but because Jerez-Lee told Plaintiff overtime was not allowed, , Plaintiff, and the male Relationship Banker, were forced to perform closing duties off-the-clock. *Id.* Though Plaintiff told Jerez-Lee she did not have enough time to perform all of her duties without working overtime hours, Jerez-Lee allowed the situation to continue. *Id.* Plaintiff and other potential class members were therefore not paid anything for this time worked off-the-clock. *Id.*

Plaintiff had no choice as to whether or not she worked extra hours. *Id.* ¶ 20. She complained about this policy because her son, who has a genetic illness, required regular doctor's appointments. *Id.* Plaintiff's requests for time off for these appointments were denied. *Id.* At one point, Plaintiff's son was rushed to the hospital, but she was barred from taking a personal or sick day to visit him. *Id.* ¶ 21. When Plaintiff complained she had a right to visit her son and use her accrued paid time off ("PTO"), Plaintiff's supervisor became cross and told her she needed to stay to run the banking center. *Id.* Plaintiff called her supervisor's supervisor to complain and was allowed to visit her son on that day. *Id.* ¶ 22. No further corrective or disciplinary action was taken as to Plaintiff's direct supervisor's policy of preventing usage of PTO. *Id.* When Plaintiff returned to work, her supervisor reprimanded her for complaining above the supervisor's rank and was told to "'never go over her head again.'" *Id.* ¶ 23.

**C.      Retaliation**

Defendant retaliated against Plaintiff for complaining about failure to provide timely meal

1  and rest breaks, failure to pay for all hours worked, and failure to pay overtime when due.  *Id.* ¶

2  40.  For instance, Jerez-Lee treated Plaintiff adversely with respect to approving days off.  *Id.*

3  Before Plaintiff complained about break violations, Jerez-Lee would approve requests for time off

4  as a general matter and did not revoke this approval.  *Id.*  Immediately after Plaintiff complained

5  about break violations, Jerez-Lee refused Plaintiff's requests for time off.  *Id.*  In addition, Jerez-

6  Lee would approve days then revoke the approval approximately one to two days before the

7  planned day off.  *Id.*

8        Plaintiff also alleges retaliation for resisting the request to record breaks even when they

9  had not been taken.  *Id.* ¶ 41.  Plaintiff understood that meal periods must be recorded, but on

10  certain occasions she was forced to skip meal breaks.  *Id.*  Her time card reflected the missed

11  breaks; however, Jerez-Lee refused to approve the timecard unless Plaintiff modified the cards to

12  report that the breaks were taken.  *Id.*  When Plaintiff initially refused, her manager stated she

13  would not have her time card approved and, thus, would not get paid if she did not modify the

14  time records.  *Id.*  Plaintiff complied with her manager's instructions and altered the time cards.

15  *Id.*

16  **D.**    **Discrimination, Harassment, and Termination**

17        In May 2017, Plaintiff discovered she was pregnant.  *Id.* ¶ 16.  After reporting her

18  pregnancy, Plaintiff was frequently and condescendingly asked inappropriate questions about her

19  health and her ability to continue working.  *Id.* ¶ 19.  Plaintiff's supervisor asked questions about

20  her future with the company and told her "'this isn't the right banking center for you.'"  *Id.*

21        In July 2017, she discovered she had developed gestational diabetes.  *Id.* ¶ 16.  As a result,

22  Plaintiff had to take breaks to check and regulate her blood glucose levels, which often required

23  the use of a glucose monitor and a snack or meal to control sugar spikes and drops.  *Id.*  Plaintiff

24  provided Bank of America with a doctor's note explaining she needed to take meal breaks to eat

25  and regulate her blood sugar levels, but Bank of America disregarded the note and continued to

26  deny Plaintiff her meal and rest periods.  *Id.* ¶¶ 17-18.  As a result, Plaintiff was often forced to

27  interrupt business to check her blood glucose levels.  *Id.* ¶ 18.  She did so in places with little to no

28  privacy, in view of co-workers and customers.  *Id.*  Plaintiff's doctor ordered that she take a leave

of absence because of her high-risk pregnancy. *Id.* ¶ 47. The doctor sent a letter to her manager, but the manager ordered her to go to work to check for any ongoing projects and to train someone else to cover her projects. *Id.*

Plaintiff went on maternity leave in August 2017. *Id.* ¶ 24. During that time, she injured her back and transitioned to long-term disability leave, which was to last until February 2018. *Id.* However, on September 29, 2017, Plaintiff received a termination letter dated two days earlier. *Id.* ¶ 25. On September 27, 2017, Plaintiff received her final pay deposit in the amount of $1,700. *Id.* This did not reflect her unused sick leave, vacation time, and other PTO to which she was entitled. *Id.* As a result of her termination, Plaintiff does not have access to medical benefits for herself or her two children. *Id.*

Prior to her termination, Plaintiff worked enough hours to accrue vested vacation PTO. *Id.* ¶ 38. After her termination, she received a paycheck but no paystub which may have been for accrued and vested PTO. *Id.* Plaintiff could not access her accrued and vested PTO data because she no longer had access to Defendant's internal website system and she did not have copies of documents that would reveal the amount of unpaid, accrued, vested vacation PTO because she previously accessed such information solely through the designated website which she could not access. *Id.* Plaintiff's wage statements, both before and at the time of her termination, were also inaccurate because they did not include the correct number of hours worked (due to the unrecorded time detailed above) or meal and rest period premiums. *Id.* ¶ 39.

**E.      Procedural History**

On January 25, 2018, Plaintiff filed this lawsuit in Alameda County Superior Court. *See* Compl., Dkt. No. 1-2; Summons, Dkt. No. 1-1. Plaintiff sought to represent a putative Hourly Employee Class defined as "[a]ll non-exempt employees who worked for Bank of America as Assistant Manager or similar job titles, in the State of California at any time on or after the date that is four years prior to when the Complaint was filed." Compl. ¶ 31. Plaintiff also sought to represent a Terminated Subclass of "[a]ll persons who are eligible for membership in the Class but who are no longer employed by Defendant." *Id.* Plaintiff brought a total of twenty causes of action. She asserted her first through eighth causes of action under the California Labor Code on

behalf of the proposed class: (1) failure to compensate for all hours worked, (2) failure to pay minimum wage, (3) failure to provide meal and rest periods, (4) failure to provide adequate time off, (5) failure to pay PTO on termination, (6) failure to pay final wages on time, (7) failure to maintain accurate records, and (8) failure to furnish wage and hour statements. *Id.* ¶¶ 34-109. Plaintiff's twentieth cause of action, asserted on behalf of the proposed class, was a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq. Id.* ¶¶ 242-52.

Plaintiff asserted her ninth through eighteenth causes of action as an individual: (1) unlawful retaliation in violation of public policy; (2) wrongful termination in violation of public policy; (3) discrimination and harassment, Cal. Gov't Code §§ 12940, *et seq.*; (4) failure to prevent and investigate discrimination and harassment, Cal. Gov't Code §§ 12940, *et seq.*; (5) failure to provide reasonable accommodation, Cal. Gov't Code §§ 12940, *et seq.*; (6) failure to engage in interactive process, Cal. Gov't Code §§ 12940, *et seq.*; (7) violation of California Family Rights Act /Family Medical Leave Act rights; (8) intentional infliction of emotional distress; (9) negligent infliction of emotional distress; and (10) negligence, Cal. Civ. Code § 1714. Compl. ¶¶ 110-238. Plaintiff also brought a nineteenth cause of action for "injunctive relief", which she asserted as an individual. *Id.* ¶¶ 239-41 ("As a result of the unlawful and wrongful conduct alleged above, . . . Plaintiff has been and will continue to be irreparably harmed."); *id.* ¶ 241 ("Plaintiff has no adequate remedy at law for the injuries it has suffered, . . . and Plaintiff has a reasonable probability of success on the merits.").

On February 23, 2018, Defendant removed the action to this Court. Not. of Removal, Dkt. No. 1. On March 16, 2018, Defendant filed a Motion to Dismiss and/or Strike. Dkt. No. 9. On May 30, 2018, the Court granted Defendant's motion without leave to amend as to Plaintiff's request for attorneys' fees pursuant to California Labor Code section 226 and independent claim for injunctive relief. Order re: Mot. to Dismiss, Dkt. No. 14. As to all remaining claims, the Court granted leave to amend. *Id.*

On June 20, 2018, Plaintiff filed her First Amended Complaint. Dkt. No. 16. Plaintiff

1    now brings fourteen causes of action: [1]

2          1) failure to compensate for all hours worked (on behalf of herself and all class members);

3          2) failure to pay minimum wage (on behalf of herself and all class members);

4          3) failure to provide meal and rest periods (on behalf of herself and all class members);

5          4) failure to pay PTO on termination (on behalf of herself);

6          5) failure to pay final wages on time (on behalf of herself and all class members);

7          6) failure to furnish wage and hour statements (on behalf of herself and all class members);

8          7) unlawful retaliation in violation of public policy (on behalf of herself);

9          8) wrongful termination in violation of public policy (on behalf of herself);

10         9) discrimination and harassment, Cal. Gov't Code §§ 12940, *et seq.* (on behalf of herself);

11         10) failure to prevent and investigate discrimination and harassment, Cal. Gov't Code §§

12             12940, *et seq.* (on behalf of herself);

13         11) failure to provide reasonable accommodation, Cal. Gov't Code §§ 12940, *et seq.* (on

14             behalf of herself);

15         12) failure to engage in interactive process, Cal. Gov't Code §§ 12940, *et seq.* (on behalf

16    of herself);

17         13) violation of California Family Rights Act/Family Medical Leave Act rights (on behalf

18             of herself); and

19         14) violation of California's UCL, Cal. Bus. & Prof. Code §§

20             17200, *et seq.* (on behalf of herself and all class members)

21    FAC ¶¶ 51-236.

22          Defendant filed the present Motion to Dismiss on July 5, 2018.

23    ///

24    ///

25

26
27
28

[1] Although she deleted six causes of action that appeared in her original Complaint, Plaintiff kept the same numbering for her causes of action in her FAC, meaning there are now 20 numbered "claims", but only 14 actual claims. For example, although Plaintiff removed her original fourth causes of action for failure to prevent and investigate discrimination and harassment, she kept the "Fourth Claim" heading with "DELETED" underneath. FAC at 23.

# LEGAL STANDARDS

## A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when the complaint does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement[',] but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

1  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

2  to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

3  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

4  *Davis*, 371 U.S. 178, 182 (1962)).

5  **B.      Rule 12(f)**

6      Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an

7  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Immaterial

8  matters are "those which ha[ve] no essential or important relationship to the claim for relief or the

9  defenses being pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on*

10  *other grounds*, 510 U.S. 517 (1994) (internal quotation marks omitted).  Impertinent matters "do

11  not pertain, and are not necessary, to the issues in question."  *Id.* (internal quotation marks

12  omitted).

13      The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that

14  must arise from litigating spurious issues by dispensing with those issues prior to trial."

15  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks

16  omitted).  "Motions to strike are generally disfavored and 'should not be granted unless the matter

17  to be stricken clearly could have no possible bearing on the subject of the litigation.'"  *Luxul Tech.*

18  *Inc. v. NectarLux, LLC*, 2015 WL 4692571, at *3 (N.D. Cal. Aug. 6, 2015) (quoting *Platte Anchor*

19  *Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)).  The decision to grant a

20  motion to strike ultimately lies within the discretion of the trial court.  *Rees v. PNC Bank, N.A.*,

21  308 F.R.D. 266, 271-72 (N.D. Cal. 2015) (citing *Whittlestone*, 618 F.3d at 973); *see Whittlestone*,

22  618 F.3d at 973 ("We review the district court's decision to strike matter pursuant to Federal Rule

23  of Civil Procedure 12(f) for abuse of discretion." (internal quotation marks omitted)).

## DISCUSSION

24

25  **A.      First and Second Causes of Action**

26      Plaintiff asserts her first cause of action – failure to compensate for all hours worked –

27  under California Labor Code sections 200-204, 218, 223, 225.5, 226, 500, 510, 558, 1194, 1194.2,

28  1197, 1197.1, and 1198.  FAC ¶¶ 51-62.  She asserts her second cause of action – failure to pay

minimum wage – under Labor Code sections 223 and 1194. *Id.* ¶¶ 63-70. Defendant argues her first cause of action fails to give adequate notice of the relief sought because she simply cites various California Labor Code sections without sufficient factual allegations to comply with the Rule 8 pleading standards. Mot. at 4. Defendant further argues that Plaintiff's FAC contains no allegation of a common policy or practice pursuant to which putative class members could bring these claims.[2] *Id.* at 4-5.

"[T]o survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014), *as amended* (Jan. 26, 2015). "Federal courts considering claims under the California Labor Code apply the standard set forth in *Landers . . .* , which involved claims under the Federal Labor Standards Act ('FLSA')." *Mie Yang v. Francesca's Collections, Inc.*, 2018 WL 984637, at *8 (N.D. Cal. Feb. 20, 2018); *see Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016) ("Although *Landers* discussed FLSA claims, its reasoning applies to California Labor Code claims as well."); *Freeman v. Zillow, Inc.*, 2015 WL 5179511, at *3 (C.D. Cal. Mar. 19, 2015) ("[T]he reasoning in *Landers* also applies to Plaintiff's overtime claim asserted under the California Labor Code because both California Labor Code § 510(a) and 29 U.S.C. § 207 require Plaintiff to have worked overtime in a given workweek to state a claim against Defendant for failure to pay overtime wages.").

Having reviewed Plaintiff's allegations, the Court finds Plaintiff states sufficient facts to support her claim. In *Landers*, an employee contended he had not received proper minimum wage or overtime payments. 771 F.3d at 646. He alleged various inadequacies in his employer's overtime policies, but "[n]otably absent from the allegations . . . was any detail regarding a given workweek when [he] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages." *Id*. The court held that while an employee need

---

[2] Defendant also argues Plaintiff's first claim should be stricken "because it is wholly redundant of the Second cause of Action for failure to pay minimum wage." *Id.* Defendant offers nothing in support of this argument, and the Court is not prepared to make such a determination at this stage in the case.

not allege "with mathematical precision" the amount of overtime compensation owed, he must

provide "sufficient detail about the length and frequency of [his] unpaid work to support a

reasonable inference that [he] worked more than forty hours in a given week." *Id.* (quoting

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)).

Because the employee in *Landers* simply alleged that he was not paid for overtime hours, without

providing details about the overtime hours worked, his allegations merely "'raise[d] the

possibility' of undercompensation", which was "not the same as plausibility." *Id.* (quoting

*Nakahata*, 723 F.3d at 201).

Here, Plaintiff alleges she "worked more than eight hours in a day and more than forty

hours in a week" on multiple occasions. FAC ¶ 33. She also provides specific examples. For

instance, in the last week of October 2015 and the first week of November 2015, Plaintiff worked

more than eight hours in a day, arriving at 9:00 a.m. and clocking out at 7:00 p.m. or 7:30 p.m. *Id.*

During the same time, Plaintiff worked approximately 45 hours per week. *Id.* These allegations

are sufficient to survive a motion to dismiss. *See Daugherty v. SolarCity Corp.*, 2017 WL 386253,

at *5 (N.D. Cal., Jan. 26, 2017) ("Thus, not only has [plaintiff] alleged that [defendant] failed to

pay adequate overtime wages that she earned on 'at least one workweek[',] as required by

*Landers*, [plaintiff's] allegations support the inference that [defendant] typically failed to pay

adequate overtime wages. Under *Landers*, that allegation is sufficient."). Plaintiff's factual

allegations plausibly support the inference that Defendant failed to pay her overtime when it was

owed on at least one occasion. That is enough under *Landers*. *Id.*

Finally, as to Plaintiff's allegations regarding putative class members, Plaintiff seeks to

represent a class of hourly employees who worked "as Assistant Manager or similar job titles."

FAC ¶ 30. As to specific allegations regarding other class members, she alleges "Plaintiff and the

Class Member had mandatory closing duties such as filing customer papers internally, closing the

bank vault, searching the banking center to ensure no customer information was left out, locking

and closing recycling bins, and waiting for other employees to finish their closing duties." *Id.* ¶

34. She also alleges "[t]he Relationship Banker she worked with was also required to performing

closing duties off-the-clock. Plaintiff told Jerez-Lee she did not have enough time [to] perform all

11

of her duties without working overtime hours, but Jerez-Lee allowed the situation to continue. Plaintiff and other Class Members were not paid anything for this time worked off-the-clock." *Id.*

Plaintiff also alleges she "observed managers [including Branch Manager Vanessa Jerez-Lee] instructing employees not to log overtime." *Id.* ¶ 33. She further alleges that because overtime was not allowed, employees were forced to perform closing duties off-the-clock, such as checks to ensure the bank was secure and conduct safety checks to ensure customer privacy. *Id.* ¶ 34. Plaintiff personally observed a fellow hourly employee performing work off-the-clock. *Id.* "During the last week of October 2015 and the first week of November 2015, Plaintiff was required to perform other duties at or beyond the eighth hour of work in a single day. Plaintiff had been told by Jerez-Lee that overtime was not allowed but also was required to complete her closing duties[,] which included important checks to ensure the bank." *Id.* The Court finds these allegations are sufficient at this stage in the case. *See, e.g., Muan v. Vitug*, 2013 WL 2403596, at *2 (N.D. Cal. May 31, 2013) (addressing bare allegation of failure to pay overtime wages and denying motion to dismiss: "It would be unfair to require [plaintiff] to provide in his complaint a detailed employment record when the law clearly requires the employer, not the employee, to maintain such a log."); *Acho v. Cort*, 2009 WL 3562472, at *3 (N.D. Cal. Oct. 27, 2009) (employee did not need to allege specific dates of overtime work or dates on which meal breaks were denied: "An employer is obligated to maintain employment records. It cannot be the case that a plaintiff must plead specific instances of unpaid overtime before being allowed to proceed to discovery to access the employer's records. Plaintiff has indicated the time period during which he worked for defendant."); *Ambriz v. Coca Cola Co.*, 2013 WL 5947010, at *4 (N.D. Cal. Nov. 5, 2013) (same).

Accordingly, the Court **DENIES** Bank of America's motion to dismiss Plaintiff's first and second causes of action.

## B. Third Cause of Action

Plaintiff brings her third cause of action – failure to provide meal and rest periods – under California Labor Code sections 226.7 and 512, and Industrial Welfare Commission ("IWC") Wage Orders. FAC ¶¶ 71-89. Defendant moves to dismiss this cause of action for failure to state a

claim for putative class relief. Mot. at 5-7. It does not seek dismissal of her individual claim.

California "wage and hour claims are . . . governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 105 (2017), *as modified* (Mar. 20, 2017), *review denied* (June 21, 2017). The California Labor Code requires employers to give their nonexempt employees meal periods and rest periods during the workday. Cal. Labor Code §§ 226.7, 512. Labor Code section 226.7(a) prohibits an employer from requiring an employee "to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Section 226.7 and IWC Wage Order No. 5-2001, operating in conjunction, require that an employer must authorize and permit all employees to take rest periods for "ten (10) minutes net rest time per four (4) hours" worked; "[h]owever, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours." Cal. Code Regs. tit. 8, § 11140(12). Additionally, Labor Code section 512(a) requires an employer to "provid[e] the employee with a meal period of not less than 30 minutes" for workdays lasting more than five hours, and provide two meal periods for workdays in excess of 10 hours, subject to waiver in certain circumstances.

Here, Plaintiff alleges Bank of America failed to consistently provide meal and rest breaks and that Plaintiff was reprimanded by her supervisor when she would try to take such breaks. FAC ¶ 14. For instance, in the last week of June 2015, the bank was understaffed and Plaintiff was ordered to work as a teller during the entire shift. *Id.* ¶ 35. Jerez-Lee told Plaintiff she could not take a break from serving as a teller unless someone took over for her, yet nobody was available to cover for Plaintiff during the entire shift. *Id.* Plaintiff personally observed the same thing happen to co-workers. Plaintiff further alleges that, though she had almost never received an uninterrupted meal or rest break, her supervisor prevented her from indicating on her records that she had not taken a meal break. *Id.* ¶ 15. In addition, she alleges other Bank of America employees were denied their meal and rest breaks and Defendant failed to make premium payments after the missed breaks. *Id.* ¶ 28.

Plaintiff also alleges Jerez-Lee interrupted employees during meal and rest breaks. *Id.* ¶

36. Jerez-Lee would ask Plaintiff to help customers with withdrawals and deposits (i.e., serve as a teller) during Plaintiff's breaks and also asked Plaintiff to enter the break room and tell a potential class member to come serve as a teller now. *Id.* This happened at least once during the last week of June 2015. *Id.* Plaintiff also was forced to start a meal break after five hours of work and a rest break after four hours of work because Jerez-Lee forced her to continue performing duties as a teller. *Id.* These late breaks also happened at least once during the last week of June 2015. *Id.* The late or missed meal breaks also occurred in the last pay period of July 2017 when Plaintiff and potential class members were told they could not start their breaks until others were available to cover for them. *Id.*

The Court finds Plaintiff's allegations are sufficient at this stage in the case. *See Ambriz*, 2013 WL 5947010, at *4-5 (holding that the plaintiff had plausibly stated a rest break claim under California law where the plaintiff alleged that "Defendant did not provide him with a net rest period of ten minutes per four hour work period, that Defendant maintained a policy of not providing him and members of the Rest Break Subclass with net rest periods of at least ten minutes per four hour work period, and that Defendant failed to pay premium wages when the rest breaks were not provided"). Plaintiff "is not required to allege the non-existence of something, such as rest periods, with any greater specificity than [s]he has done here." *Id.* And, as discussed above, Plaintiff seeks to represent a class of hourly employees who worked "as Assistant Manager or similar job titles." *Id.* ¶ 30. She alleges she "personally observed the same thing happen to co-workers." *Id.* ¶ 35; *see also id.* ¶ 36 (manager asked Plaintiff to interrupt other class members' breaks). The Court finds Plaintiff's allegations sufficient to put Defendant on notice that class members were required to work through breaks.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's third cause of action for failure to provide meal and rest periods.

## C.     Fifth Cause of Action

Plaintiff's fifth cause of action alleges she "had accrued but unused vacation time upon her termination from employment with Defendants, but Defendants failed and refused to pay Plaintiff and Class Members for the value of that time upon termination." FAC ¶ 93. Defendant argues

14

Plaintiff fails to state a plausible claim for relief because she recites no facts in her FAC regarding the specific contract terms providing for paid vacation time, sick leave, or PTO and she pleads no facts plausibly supporting her belief that she was not paid all accrued vacation. Mot. at 8. Defendant further argues Plaintiff fails to allege a specific policy or practice applicable to all putative class members. *Id.* at 9.

As is relevant here, Labor Code section 227.3 provides that

> whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.

"California law does not require an employer to provide its employees with any paid vacation"; however, "if an employer chooses to include paid vacation as a portion of the employee's compensation, the employer is not free to reclaim it after it has been earned." *Minnick v. Auto. Creations, Inc.*, 13 Cal. App. 5th 1000, 1004 (2017), *review denied* (Nov. 15, 2017). "[V]acation time 'is not a gratuity or a gift, but is, in effect, additional wages for services performed.'" *Id.* (quoting *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982)). Put another way, "vacation pay is simply a form of deferred compensation." *Suastez*, 31 Cal. 3d at 780.

To show entitlement to unpaid, vested vacation, sick, and PTO wages, Plaintiff must first establish she and potential class members are entitled to such wages. *See Owen v. Macy's, Inc.*, 175 Cal. App. 4th 462, 468 (2009) ("On its face, Labor Code section 227.3 does not require that an employer provide its employees with any paid vacation at all, contractually or as a matter of policy, as part of the employee compensation package."). It is insufficient for Plaintiff to simply allege Bank of America had a vacation policy. *Andresen v. Int'l Paper Co.*, 2013 WL 2285338, at *3 (C.D. Cal. May 23, 2013).

Plaintiff alleges Bank of America's PTO policy is located on its internal system, which employees access at www.BankofAmerica.com/Associate. FAC ¶ 38. She alleges she worked enough hours to accrue vested vacation PTO and the amount accrued was available through the

15

website. *Id.* After her termination, Plaintiff received a paycheck but no paystub which may have been for accrued and vested PTO. *Id.* And, as she is no longer an employee, she is unable to access her accrued and vested PTO data. *Id.* Plaintiff states she does not have copies of documents that would reveal the amount of unpaid, accrued, vested vacation PTO because she previously accessed such information solely through the designated website, but she intends to conduct discovery to obtain data to prove that she was not paid all accrued, vested, vacation PTO. *Id.* The Court finds these allegations sufficient. And, because the policy is applicable to potential class members (*see id.* ¶¶ 92, 94-95), her class claim is also sufficient at this stage in the case.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's fifth cause of action for failure to provide PTO at termination.

**D.      Sixth Cause of Action**

Plaintiff brings her sixth cause of action for failure to pay final wages on time under Labor Code sections 201 through 204. FAC ¶¶ 98-105. Defendant argues Plaintiff fails to allege facts sufficient to support her claim, including any allegation that Defendant acted willfully. Mot. at 9-10. Defendant further argues that payments under California Labor Code section 226.7 are not "wages earned", and the non-payment thereof at termination does not trigger liability for waiting time penalties. *Id.* at 11.

Under Labor Code section 201(a), "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." But if an employee does not "hav[e] a written contract for a definite period [and] quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter", subject to certain exceptions. Cal. Labor Code § 202(a). Employees are awarded a penalty if an employer willfully fails to pay unpaid wages pursuant to sections 201 and 202, among others. *Id.* § 203(a). "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs. tit. 8, § 13520; *see Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008) ("The settled meaning of 'willful[',] as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done.").

Plaintiff alleges her final check did not include all of the paid time off to which she was entitled. FAC ¶¶ 25. She further alleges Bank of America "willfully failed to pay all final wages on time." *Id.* ¶ 92. "[I]n civil cases, the word 'willful[',] as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent." *Baker v. Am. Horticulture Supply, Inc.*, 185 Cal. App. 4th 1059, 1075 (2010), as modified on denial of reh'g (July 21, 2010). Combined with her overtime and meal and rest claims discussed above, including Defendant's failure to provide accurate wage statements that included time for the meal and rest breaks Plaintiff and the potential class members were unable to take, the Court finds Plaintiff's allegations support a claim for waiting time penalties. *Daugherty*, 2017 WL 386253, at *8 (dismissing the plaintiff's section 203 waiting time penalties claim with leave to amend to offer an explanation of what wages remain unpaid and suggesting "[p]ossibly, she means the unpaid overtime wages and meal-period/rest-break premium wages.").

Defendant also argues Plaintiff's section 203 claim fails to the extent it relies on a failure to make section 226.7 meal and rest period payments at termination because section 226.7 payments do not constitute "wages earned" under California Labor Code section 201. Mot. at 11-12. Two California Supreme Court cases have addressed this issue in other contexts. In *Murphy v. Kenneth Cole Products., Inc.*, the California Supreme Court held that meal and rest premiums sought under section 226.7 are wages for statute of limitations purposes. 40 Cal. 4th 1094, 1113 (2007). There, the appellant argued that payments ordered for meal and rest period violations were "penalties" and therefore subject to the statute of limitations related to penalties. *Id.* at 1102. The Court disagreed, holding the payments were "wages" and fell under the statute of limitations for statutory liabilities other than penalties, including related to wages. *Id.* at 1113. The Court noted that payments for meal and rest period violations had a "behavior-shaping purpose", but were "first and foremost [meant] to compensate employees for their injuries." *Id.* at 1110-11. The Court concluded that payments for meal and rest period violations were wages, rather than

17

penalties, and therefore fell under the statute of limitations related to wages. *Id.*

In a subsequent case, *Kirby v. Immoos Fire Protection*, the Court confronted the same question in a case in which an employer sought to recover attorney's fees from employees who had unsuccessfully litigated a claim for meal and rest premiums under section 226.7. 53 Cal. 4th 1244, 1248 (2012). Under California law, the prevailing party may recover attorney's fees in any action brought for the "nonpayment of wages." Cal. Labor Code § 218.5. The Court held that the employer was not entitled to attorney's fees because "a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks." *Kirby*, 53 Cal. 4th at 1257. Like in *Murphy*, the Court affirmed that a section 226.7 remedy is a wage, but noted that calling a section 226.7 remedy a wage "is not to say that the legal violation triggering the remedy is nonpayment of wages. As explained above, the legal violation is nonprovision of meal or rest breaks, and the object that follows the phrase 'action brought for' in section 218.5 is the alleged legal violation, not the desired remedy." *Id.* Thus, the remedy for a section 226.7 violation is a wage, but the violation triggering the remedy is failure to provide meal or rest breaks, not nonpayment of wages. *Id.*

As Defendant has identified, district courts have disagreed over whether payment for meal and rest period violations pursuant to section 226.7 are also wages for the purpose of section 203 penalties. Mot. at 12-13. However, a majority of courts, including those in this District, have found that premiums for unpaid rest breaks are "wages" entitling plaintiffs to waiting time penalties under Labor Code section 203 for failure to timely pay wages upon termination. *See In re: Autozone, Inc.*, 2016 WL 4208200, at *6 (N.D. Cal. Aug. 10, 2016), *recons. denied sub nom. In re: AutoZone, Inc.*, 2016 WL 6834138 (N.D. Cal. Nov. 21, 2016), *leave to appeal denied sub nom. Ellison v. AutoZone Inc.*, 2017 WL 6048892 (9th Cir. Mar. 3, 2017); *but see Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016) ("[T]he remedy for a section 226.7 violation is an extra hour of pay, but the fact that the remedy is measured by an employee's hourly wage does not transmute the remedy into a wage as that term is used in section 203").

This Court agrees with the majority of courts that meal and rest premiums are wages for the purpose of waiting time penalties. "The definition of 'wages' is construed broadly in favor of

18

employees." *Brewer v. General Nutrition Corp.*, 2015 WL 5072039, at *18 (N.D. Cal. Aug. 27, 2015) (citing *Murphy*, 40 Cal. 4th at 1103). Thus, giving a broad reading to the term "wages", the Court finds that unpaid meal and rest period premiums are "wages" for the purposes for California Labor Code section 203.

Accordingly, the Court **DENIES** Defendant's motion as to Plaintiff's sixth cause of action for failure to pay waiting time penalties.

## E.     Eighth Cause of Action

Plaintiff's eighth cause of action asserts Bank of America failed to furnish wage and hour statements as required by Labor Code section 226. FAC ¶¶ 106-14. Defendant argues Plaintiff fails to allege any facts plausibly suggesting she or any putative class members suffered the requisite injury because the wage statements were not inaccurate as to the wages actually paid to her. Mot. at 14-15. Defendant further argues Plaintiff's claim fails because it is only required to report wages the employee is actually being paid, yet Plaintiff does not allege that the wage statements she received from Bank of America were inaccurate in reporting the wages actually paid to her and/or the deductions actually made during the applicable pay period. *Id.* at 15-16. Finally, Defendant again argues that section 226.7 meal break payments are not required to be itemized on wage statements under section 226(a). *Id.* at 16-17.

California Labor Code section 226(a) requires "an accurate itemized statement in writing" showing nine specific items. An employee who suffers an injury "as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover" damages. Cal. Labor Code § 226(e). To establish liability under section 226(e), an employee must demonstrate: "(1) a failure to include in the wage statement one or more of the required items from Section 226(a); (2) that failure was 'knowing and intentional'; and (3) a resulting injury." *Brewer*, 2015 WL 5072039, at *5. "[A] knowing and intentional failure must be more than an isolated and unintentional payroll error due to a clerical or inadvertent mistake." *Willner v. Manpower, Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014) (internal quotation marks omitted); Cal. Labor Code § 226(e)(3). Relevant factors include "whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply

with this section." Cal. Labor Code § 226(e)(3). Thus, "[a] violation exists if the employer 'knew that facts existed that brought its actions or omissions within the provisions of the statute.'" *Ming-Hsiang Kao v. Joy Holiday*, 12 Cal. App. 5th 947, 961 (2017) (quoting *Willner*, 35 F. Supp. 3d at 1131) (brackets omitted). "[A] mistake of law . . . is not excused under the statute mandating itemized wage statements." *Id.* at 962. "[T]o satisfy the 'knowing and intentional' requirement, a plaintiff 'need only plead that defendants knew of the facts underlying the alleged violation, and need not plead that defendants had knowledge that their alleged actions were unlawful.'" *Perez v. Performance Food Grp., Inc.*, 2016 WL 1161508, at *3 (N.D. Cal. Mar. 23, 2016) (quoting *Contreras v. Performance Food Grp., Inc.*, 2014 WL 6481365, at *3 (N.D. Cal. Nov. 18, 2014)); *Kao v. Holiday*, 12 Cal. App. 5th 947, 962 (2017).

Plaintiff alleges Bank of America "knowingly failed to provide . . . accurate wage and hour statements[.]" FAC ¶ 106. Courts generally find this type of allegation sufficient. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Perez*, 2016 WL 1161508, at *3 (allegation that defendants knew wage statements did not comply with section 226 was adequate to withstand motion to dismiss); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 811 (N.D. Cal. 2015) ("A simple allegation that an employer's failure to provide accurate wage statements was 'knowing and intentional' suffices to state a claim under section 226." (citing *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012) ("[T]he FAC expressly states that [defendant]'s failure to comply with § 226 was 'knowing and intentional.' [] Because mental states may be alleged generally, [p]laintiffs have adequately alleged 'knowing and intentional' conduct. . . ."))); *Laumea v. Performance Food Grp., Inc.*, 2014 WL 12695804, at *7 (C.D. Cal. Nov. 5, 2014) (allegation that "[d]efendant 'intentionally and willfully' failed to provide accurate wage statements" is sufficient because "[p]laintiff is entitled to all reasonable inferences, . . . and it is reasonable to infer that Defendant knew both that rates of pay should be included on wage statements as well as that employees were paid incentive and shift differential payments that were not calculated into the employees' rates of pay").

Defendant also contends Plaintiff fails to set forth adequate facts to support her allegation

20

that she and putative class members were injured as a result Bank of America's alleged conduct. Mot. at 14-15. However, injuries from a failure to provide an accurate pay statement include the "possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." *Elliot v. Spherion Pac. Works, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008).

Plaintiff pleads that Bank of America's pay stubs fail to accurately list "the inclusive dates of the pay period, gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity employing them, all applicable hourly rates in effect during each pay period, and the corresponding number of hours worked at each hourly rate." FAC ¶ 106. She further alleges that "Plaintiff and Class Members could not determine whether they were paid properly and/or did not receive pay for all hours worked, and thus suffered monetary damages due to Defendants' policies." *Id.* ¶ 107. This is a sufficient allegation of an injury. *See Daugherty*, 2017 WL 386253 at *7 (finding that plaintiff's allegations regarding defendant's failure to calculate and pay the regular rate correctly for overtime supported a claim for inaccurate wage statements, and noting that "[i]n 2013, the California Legislature amended Section 226 [to] provide that an employee is deemed to suffer injury if an employer 'fails to provide accurate and complete information as required by [section 226(a)] and the employee cannot promptly and easily determine from the wage statement alone' the information required to be conveyed."); *Ambriz*, 2013 WL 5947010, at *7 (finding allegations that defendant failed to provide "written wage statements with accurate entries for hours worked, corresponding wage rates, and gross and net wages, as a result of not paying him minimum, overtime, and/or vacation wages" sufficient to establish injury); *Contreras*, 2014 WL 6481365, at *4 (alleging that wage statements did not accurately show all wages earned because of failure to provide meal break payments and a piece-rate compensation system is sufficient to constitute "injury" under section 226).

Defendant also argues meal and rest period premiums need not appear on wage statements because they are liquidated damages, not wages. Mot. at 19-21. Courts have split as to whether

premiums for meal and rest periods are wages for the purpose of accurate pay statements, but the majority of courts have held that meal and rest premiums are wages, finding the holding in *Murphy* remains controlling: that the "additional hour of pay" premium owed for meal and rest violations is a "wage" and must be included in pay statements. *See, e.g., Abad v. Gen. Nutrition Ctrs., Inc.*, 2013 WL 4038617, at *3 (C.D. Cal. Mar. 7, 2013) (holding that a claim for failure to provide accurate pay statements can be based on meal and rest premiums owed under section 226.7 because *Murphy* held that such premiums are wages, and collecting cases in accord); *Castillo v. Bank of Am. Nat'l Ass'n*, 2018 WL 1409314, at *8 (C.D. Cal. Feb. 1, 2018); *but see Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184, 1195 (E.D. Cal. 2017) (holding—based on *Kirby*— that meal and rest premiums are not wages for the purpose of accurate pay statements, because pay statements are aimed at promoting transparency, whereas meal and rest requirements are aimed at promoting health and welfare). This Court agrees with the majority position that because *Murphy* held meal and rest premiums are wages, a plaintiff can bring a claim for failure to accurately describe these wages on pay statements. *See Murphy*, 40 Cal. 4th at 1113. Thus, Plaintiff adequately pleads that she did not receive an accurate wage statement.

Accordingly, the Court **DENIES** Bank of America's motion as to Plaintiff's eighth claim for failure to provide accurate wage statements.

## F. Ninth Cause of Action

Plaintiff brings an individual cause of action for unlawful retaliation in violation of public policy pursuant to California Labor Code sections 98.6, 230, 232, 232.5, and 1102.5. FAC ¶¶ 115-31. As an initial matter, Defendant argues Plaintiff's claims for violations of sections 230, 232 and 232.5 should be dismissed because her FAC is devoid of any allegations relevant to those sections. Mot. at 19. As the Court noted in its previous Order, it is unclear why Plaintiff brings her claim under Labor Code section 230, which prohibits employers from discriminating against an employee who takes time off to serve on a jury or an employee who is a victim of a crime, domestic violence, sexual assault, or stalking and must participate in a related judicial proceeding. Plaintiff does not allege any facts suggesting she had jury duty or was a survivor of a crime, domestic violence, sexual assault, or stalking, let alone that Bank of America discriminated against

22

her as a result. It is also unclear why Plaintiff brings this cause of action under Labor Code sections 232 and 232.5, which prohibit employers from preventing employees from disclosing the amount of their wages and working conditions. Plaintiff does not allege Bank of America prohibited her from disclosing her wages or working conditions, or that she in fact made such disclosures. As such, the Court **GRANTS** Defendant's motion as to Plaintiff's unlawful retaliation claims under California Labor Code sections 230, 232, and 232.5 **WITHOUT LEAVE TO AMEND**.

As to Plaintiff's claims under sections 98.6 and 1102.5, Defendant argues Plaintiff cannot establish that she engaged in protected activity to support a claim for retaliation pursuant to the Labor Code sections she cites, nor can she establish a causal connection between her alleged protected activity and any adverse employment action. Mot. at 18.

California Labor Code section 98.6(a) provides that

> [a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter . . . or because the employee . . . filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that he or she is owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee . . . on behalf of himself, herself, or others of any rights afforded him or her.

However, section 98.6(a) only "prohibit[s] terminations for conduct otherwise protected by the Labor Code." *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 87 (2004). In other words, an employee "must allege her termination occurred because she exercised a right protected by the Labor Code." *Id.*

Labor Code section 1102.5(b) protects employees from whistleblower retaliation. It provides, in part:

> (b) An employer . . . shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate,

discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

A prima facie case of retaliation under sections 98.6 and 1102.5 requires a plaintiff to show: "(1) he engaged in protected activity; (2) his employer thereafter subjected him to an adverse employment action; and (3) a causal link between the two." *Turner v. City & Cty. of San Francisco*, 892 F. Supp. 2d 1188, 1199 (N.D. Cal. 2012) (internal quotation marks omitted); *Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 969 (N.D. Cal. 2010) (applying elements to sections 98.6 and 1102.5); *Alabado v. French Concepts, Inc.*, 2016 WL 5929247, at *10 (C.D. Cal. May 2, 2016) (same).

Plaintiff alleges she tried to take meal and rest breaks, to which she was entitled, despite being reprimanded for doing so by her supervisor. FAC ¶ 14. Plaintiff alleges she was forced to skip meal breaks, but her supervisor then prevented her from indicating on her records that she had been denied such meal periods. *Id.* ¶¶ 15, 41. She further alleges: "Before Plaintiff complained about break violations, Jerez-Lee would approve requests for time off as a general matter and did not revoke this approval. Immediately after Plaintiff complained about break violations, the Branch Manager would refuse Plaintiff's requests for time off." *Id.* ¶ 40. Plaintiff contends Jerez-Lee also began approving days off, then revoking the approval approximately one to two days before the planned day off. *Id.* These allegations are sufficient to state a claim for retaliation under the California Labor Code. However, to the extent Plaintiff seeks to bring a claim based on her maternity leave, taking maternity leave is not a protected activity under the Labor Code. *See Grinzi*, 120 Cal. App. 4th at 87.

Accordingly, the Court **DENIES** Defendant's motion as to Plaintiff's retaliation claim under sections 98.6 and 1102.5. However, the Court **GRANTS** Defendant's motion to the extent Plaintiff seeks to bring a claim under section 98.6 related to her pregnancy **WITHOUT LEAVE TO AMEND.**

**G.      Tenth and Eleventh Causes of Action**

Plaintiff's tenth cause of action asserts an individual *Tameny* claim for wrongful termination in violation of public policy.  FAC ¶¶ 132-39; *see Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980).  Her eleventh cause of action asserts a claim for discrimination and harassment in violation of FEHA.  FAC ¶¶ 140-59; *see* Cal. Gov't Code §§ 12940, *et seq.* Defendant argues her claims fail because the FAC is vague as to the protected characteristic that forms the basis of her discrimination claim, noting Plaintiff includes allegations regarding pregnancy, a back injury, and gestational diabetes.  Mot. at 20.  Defendant further argues Plaintiff fails to offer sufficient facts showing her protected characteristic was a substantially motivating reason for the alleged adverse action.  *Id.*

California's FEHA prohibits an employer from discriminating on the basis of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status."  Cal. Gov't Code § 12940(a).  To state a prima facie case of discrimination under FEHA, a plaintiff must show

> "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."

*Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1067-68 (2017) (quoting *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 355 (2000)).  In addition, a plaintiff must demonstrate that the "illegitimate criterion was a substantial factor in the particular employment decision."  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (internal quotation marks omitted).  "Requiring the plaintiff to show that discrimination was a substantial motivating factor, rather than simply a motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision."  *Id.*

Plaintiff has adequately pleaded membership in a protected class in that she was pregnant and diagnosed with gestational diabetes during her pregnancy and that a back injury required long-term disability leave (FAC ¶¶ 16-24), that she was performing competently (*id.* ¶ 13 ("At all time

during her employment with Defendants, Plaintiff was performing her job duties satisfactorily and received positive performance reviews)), and that she suffered an adverse employment action in that she was denied time off and eventually terminated after taking disability leave (*id.* ¶¶ 21-24). The question is whether she has adequately pleaded circumstances that suggest that a discriminatory motive was a substantial factor in the decision.

Plaintiff contends that immediately after reporting she was pregnant, she was treated differently. She alleges "[t]he Branch Manager said Plaintiff should look into being transferred out of the position because the bank "needs someone more stable", and that Jerez-Lee said, 'You're not pregnant, right? Because if you're pregnant you won't be a good fit for this position.'" *Id.* ¶ 42. She alleges this "conversation arose when Plaintiff reported having difficulty lifting a heavy box of coins. Plaintiff provides other examples as well:

> For instance, Plaintiff's job duties were changed so that she was performing fewer high-level functions. More specifically, before she announced her pregnancy, Plaintiff would perform operational checks such as reviewing reports and ensuring the proper paperwork and signatures were obtained for new bank accounts and credit applications. After Plaintiff announced she was pregnant, she was relegated to lower-level duties such as helping customers with deposits and withdrawals." The timing suggested causation; in addition, the Branch Manager stated Plaintiff was not fit to perform her current duties. During Plaintiff's pregnancy leave, she injured her back. Accordingly, Plaintiff's leave of absence was extended based on the back injury. Plaintiff was informed that Aetna would call the Branch Manager to inform her of the change. Plaintiff alleges that a substantial motivating factor for her termination was her back injury. The back injury was severe enough it affected her movement and substantially impaired life functions such as challenges presented for sleeping and for lifting any heavy objects. Plaintiff's Branch Manager initially stated a pregnant person would not be fit for Plaintiff's job duties when Plaintiff reported that her back was hurting lifting heavy coin boxes. Plaintiff alleges she was terminated because of her back injury due to the Branch Manager's comments that a pregnant person would not be fit to perform Plaintiff['s] duties.

*Id.*

Plaintiff also alleges that, due to her gestational diabetes, when she was in the restroom checking her insulin, her manager would ask "what she was doing in there and would ask her to come help customers quickly. When Plaintiff was on the way to the restroom to check her blood sugar, her manager would say, 'Can you wait?' This treatment was frequent, severe, and

pervasive." *Id.* ¶ 43. These allegations sufficiently put Defendant on notice as to the facts supporting her claim that a discriminatory motive was a substantial factor in the decision. *See Rico v. Jones Lang LaSalle Americas, Inc.*, 2014 WL 1512190, at *3 (C.D. Cal. Apr. 16, 2014) (finding plaintiff had alleged "sufficiently severe" "pattern of harassing conduct" where plaintiff alleged her supervisor "condescendingly questioned whether [p]laintiff had been promoted too soon, attempted to demote her, expressed frustration that [p]laintiff was taking maternity leave, [] suggested that [p]laintiff needed to work 'extra time' before taking her leave[,] . . . questioned [p]laintiff's ability to do the job before she returned from maternity leave, gave [p]laintiff an unwarranted negative performance review upon her return, and prevented her from transferring to [a different] office"; "taken together, [these allegations] suggest at least a possibility [of] a pattern of harassing conduct toward [p]laintiff based on her pregnancy"). The Court finds these allegations are sufficient. At this stage, Plaintiff is not required to present facts proving a prima facie case; rather, *Iqbal* merely requires sufficient factual matter to be alleged that permits a "plausible inference" that a prima facie case has been stated.

As to Plaintiff's wrongful termination claim, a common law wrongful termination claim rests on demonstrating a violation of public policy. *Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 (1993); *Tameny*, 27 Cal.3d at 172. Employment discrimination violates public policy and will support a wrongful discrimination claim. *City of Moorpark v. Sup. Ct. (Dillon)*, 18 Cal.4th 1143, 1158-60 (1998). Similarly, a wrongful discharge claim may be premised on a violation of FEHA, as asserted by Plaintiff here. *See Stevenson v. Sup. Ct. (Huntington Mem. Hosp.)*, 16 Cal.4th 880 (1997). Thus, whether Plaintiff has adequately pleaded a wrongful termination claim is coincident with whether she has adequately pleaded a violation of FEHA. Therefore, as Plaintiff has sufficiently pleaded a FEHA claim, this claim also survives.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's tenth and eleventh causes of action for wrongful termination in violation of public policy and for discrimination and harassment in violation of FEHA.

**H.** **Twelfth Cause of Action**

Plaintiff's twelfth cause of action alleges Bank of America failed to prevent and investigate

harassment and discrimination against Plaintiff in violation of FEHA. FAC ¶¶ 160-76. FEHA requires an employer to "take all reasonable steps to prevent harassment from occurring." Cal. Gov't Code § 12940(j)(1). It also makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." *Id.* § 12940(k). Plaintiff alleges she "complained about the harassment and discrimination to one [her] managers", but "Defendants did not investigate Plaintiff's complaints or take action to stop the harassment and discrimination." *Id.* ¶¶ 45, 169. Defendant's sole argument in support of its motion to dismiss this claim is: "For the same reasons that Plaintiff cannot state claims for discrimination, harassment, and retaliation under the FEHA, Plaintiff's wholly derivative Twelfth Cause of Action for failure to prevent and investigate discrimination and harassment also fails as a matter of law." Mot. at 23. However, as discussed above, those claims survive.

Accordingly, the Court **DENIES** Defendant's motion as to Plaintiff's twelfth cause of action for failure to investigate.

## I.   Twentieth Cause of Action

Plaintiff's twentieth and final cause of action asserts a UCL violation for unfair business practices. FAC ¶¶ 226-36. "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section[s] 17200, [*et seq.*] and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Defendant argues Plaintiff's claim fails as a matter of law to the extent it is wholly derivative of her claims and allegations that do not satisfy the pleading requirements of Rule 8. Mot. at 23. However, Plaintiff's UCL claim "rise[s] and fall[s] with the substantive causes of action already discussed." *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 6294472, at *18 (N.D. Cal. Dec. 15, 2011). As those claims remain, dismissal of her UCL claim is inappropriate.

Defendant also argues that, to the extent Plaintiff seeks restitution of meal and rest break payments under Labor Code section 226.7, inaccurate wage statement penalties under section 226, and/or waiting time penalties under section 203, her claim fails because such payments and penalties are not subject to restitution under the UCL. Mot. at 23. However, courts have held that

payments for meal and rest period premiums from section 226.7 are restitutionary. *See, e.g., Tomilson v. Indymac Bank*, 359 F. Supp. 2d 891, 896 (C.D. Cal. 2005); *Castillo*, 2018 WL 1409314, at *9. Like the plaintiffs in *Tomilson* and *Castillo*, Plaintiff is seeking to recover wages owed under section 226.7. As these unpaid wages belong to the employee, they may be recovered as restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000); *Castillo*, 2018 WL 1409314, at *9. "An order that earned wages be paid is . . . a restitutionary remedy authorized by the UCL." *Cortez*, 23 Cal. 4th at 178. Therefore, Plaintiff can maintain a UCL claim because she is seeking restitution for wages she is owed under section 226.7.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's UCL cause of action.

**J.      Injunctive Relief**

As part of her Prayer for Relief, Plaintiff seeks injunctive relief. FAC at 47. In its previous Order, the Court held that Plaintiff failed to allege facts showing she has standing to seek injunctive relief as a former employee but granted Plaintiff leave to "allege facts showing an imminent threat of future harm." Order at 49. Defendant again seeks dismissal of her request for injunctive relief, arguing she still fails to allege any facts showing that she will suffer any threat of real and immediate future harm because of the conduct alleged in the FAC. Mot. at 24. Defendant argues she also lacks standing to represent a putative class seeking that relief. *Id.*

It is undisputed that Plaintiff is no longer employed by Defendant. FAC ¶ 25. The Ninth Circuit has held that "[a] former employee currently seeking to be reinstated or rehired may have standing to seek injunctive relief against a former employer. But a former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) (internal citations omitted); *see also Davidson v Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017) (threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute injury in fact supporting injunctive relief). That Plaintiff purports to represent a class in this action does not alter the analysis. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021

(9th Cir. 2004) (explaining a plaintiff may have standing in state court to seek such relief, but nonetheless may be unable to establish Article III standing to pursue injunctive relief in federal court because he cannot demonstrate real or immediate threat of irreparable injury); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."); *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1138 (N.D. Cal. 2017) ("In a class action, a plaintiff 'cannot rely on the prospect of future injury to unnamed class members if they cannot establish they have standing to seek injunctive relief.'"). Plaintiff does not allege she may seek future employment with Defendant. She therefore lacks Article III standing to seek injunctive relief because she cannot demonstrate a credible threat of future injury.

Accordingly, the Court **GRANTS** Defendant's motion as to Plaintiff's prayer for injunctive relief **WITHOUT LEAVE TO AMEND**.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Bank of America's Motion as follows:

1) Bank of America's motion is **DENIED** as to Plaintiff's first claim for failure to compensate for all hours worked;

2) Bank of America's motion is **DENIED** as to Plaintiff's second claim for failure to pay minimum wage;

3) Bank of America's motion is **DENIED** as to Plaintiff's third claim for failure to provide meal and rest periods;

4) Bank of America's motion is **DENIED** as to Plaintiff's fifth claim for failure to pay PTO on termination;

5) Bank of America's motion is **DENIED** as to Plaintiff's sixth claim for failure to pay final wages on time;

6) Bank of America's motion is **DENIED** as to Plaintiff's eighth claim for failure to furnish wage and hour statements;

7) Bank of America's motion is **GRANTED WITHOUT LEAVE TO AMEND** as to

Plaintiff's ninth claim for unlawful retaliation, but only as to Plaintiff's claim under California Labor Code sections 230, 232, 232.5, and to the extent she seeks to bring a claim under section 98.6 related to her pregnancy. The Court **DENIES** Bank of America's motion as to Plaintiff's retaliation claim under sections 98.6 (unrelated to her pregnancy) and 1102.5;

8) Bank of America's motion is **DENIED** as to Plaintiff's tenth claim for wrongful termination in violation of public policy;

9) Bank of America's motion is **DENIED** as to Plaintiff's eleventh claim for discrimination and harassment under FEHA;

10) Bank of America's motion is **DENIED** as to Plaintiff's twelfth claim for failure to prevent and investigate discrimination and harassment;

11) Bank of America's motion is **DENIED** as to Plaintiff's twentieth claim for violation of the UCL; and

12) Bank of America's motion is **GRANTED** as to Plaintiff's claim for injunctive relief **WITHOUT LEAVE TO AMEND**. If a plaintiff with standing to seek such relief joins the action, he or she may seek leave to amend the pleadings at that time.

Because the Court did not consider any of the submitted documents, Defendant's request for judicial notice is **DENIED AS MOOT**.

**IT IS SO ORDERED.**


Dated: August 2, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge

31