UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ARIANNA SUAREZ, | Case No. 18-cv-01202-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING PRELIMINARY APPROVAL** |
| BANK OF AMERICA, NATIONAL ASSOCIATION, | Re: ECF No. 200 |
| Defendant. | |
| IRMA FRAUSTO, | Case No. 18-cv-01983-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING PRELIMINARY APPROVAL** |
| BANK OF AMERICA, NATIONAL ASSOCIATION, | |
| Defendant. | |

**INTRODUCTION**

In these putative class actions under Federal Rule of Civil Procedure 23, the plaintiffs —

current and former nonexempt California employees at Bank of America — challenge Bank of

America's alleged failure to pay them for their off-the-clock work, provide meal and rest breaks,

United States District Court
Northern District of California

1  or reimburse expenses. The plaintiffs claim violations of the California Labor Code, California's

2  Unfair Competition Law (UCL), and California's Private Attorney's General Act (PAGA).[1]

3      The parties in both cases settled,[2] and the plaintiffs moved for preliminary approval of the

4  proposed settlement under Federal Rule of Civil Procedure 23(e).[3] The court grants the unopposed

5  motion.

6                                    **STATEMENT**

7  **1.  The Lawsuit**

8      The two cases are *Suarez v. Bank of Am., N.A.*, No. 18-cv-01202-LB, and *Frausto v. Bank of*

9  *Am., N.A.*, No. 18-cv-01983-LB. Previously, the plaintiffs in other, related cases settled with Bank

10 of America, and the undersigned approved the settlement. *Harrison v. Bank of Am. Corp.*, No. 19-

11 CV-00316-LB, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021). Here, Arianna Suarez originally

12 filed a complaint in Alameda County Superior Court on January 25, 2018, and Irma Frausto filed

13 her complaint in the same court on February 22, 2018.[4] The cases were removed to this court and

14 then related on July 11, 2018.[5] On August 2, 2018, the court in *Frausto* partially dismissed the

15 meal- and rest-break claims.[6] In both cases, the court partially granted Bank of America's motion

16 for summary judgment on two claims, but otherwise denied the motion, on Oct. 31, 2019.[7]

17     For settlement purposes, the parties stipulated to the consolidated Second Amended Complaint

18 (SAC).[8] Of the eight claims, six are under the California Labor Code: failure to pay minimum and

19 overtime wages, failure to provide meal and rest breaks, failure to timely pay wages at

20

21

---

22 [1] Second Amended Class Action Complaint (SAC) – ECF No. 200-3. Citations refer to material in the Electronic Case File (ECF) in *Frausto* unless *Suarez* is specified; pinpoint citations are to the ECF-
23 generated page numbers at the top of documents.

24 [2] Settlement Agreement – ECF No. 200-2.

   [3] Mot. – ECF No. 200.

25 [4] Compl. – ECF No. 1-1 at 4–27; *Suarez* Compl. – ECF No. 1-2.

26 [5] Notice of Removal – ECF No. 1; *Suarez* Notice of Removal – ECF No. 1; Order – ECF No. 34.

27 [6] Marquez Decl. – ECF No. 200-1 at 4 (¶ 4); Order – ECF No. 37.

   [7] Marquez Decl. – ECF No. 200-1 at 4 (¶ 5); Order – ECF No. 83.

28 [8] Settlement Agreement – ECF No. 200-2 at 4, 8–9 (¶ 21); SAC – ECF No. 200-3.

United States District Court
Northern District of California

1    termination, and failure to provide accurate wage statements. There are also two derivative claims,

2    for unfair business practices under the UCL and PAGA penalties.[9]

3         There was litigation over class certification in both cases.[10] Ms. Frausto and Ms. Suarez moved

4    together for class certification, and on December 3, 2019, the court granted the motion in part,

5    specifying a narrowed class and asking the parties to confer and submit a joint revised class

6    definition.[11] The parties were then unable to agree on a class definition.[12] Bank of America tried to

7    appeal the order, but the Ninth Circuit denied it permission to appeal.[13] The case was then stayed

8    for a time pending mediation.[14] About a year later, all parties moved for reconsideration of the

9    class-certification order, and on June 17, 2021, the court granted Bank of America's motion and

10   issued an order denying class certification ("primarily because there [was] not the requisite

11   evidence of de facto [Bank of America] policies").[15] The Ninth Circuit denied the plaintiffs

12   permission to appeal that order on November 8, 2021.[16]

13        "The parties engaged in a significant amount of investigation, class-wide discovery, and

14   analysis prior to reaching the proposed settlement." Based on the discovery provided by the

15   defendants (such as on the company's wage-and-hour policies and practices) and their own

16   research, the plaintiff's counsel prepared a damages model with the assistance of a statistics

17   expert.[17] Although in theory the maximum damages could be "in the tens of millions of dollars,"

18   the court's denial of class certification "means that the realistic potential recovery for [the

19   plaintiffs'] claims is nominal."[18] But based on a more recent California Supreme Court case, *Ferra*

20

21   ―――――――――――――――
     [9] SAC – ECF No. 200-3 at 17–28 (¶¶ 34–101).

22   [10] Marquez Decl. – ECF No. 200-1 at 4–5 (¶¶ 6–11).

23   [11] Order – ECF No. 128.

24   [12] Marquez Decl. – ECF No. 200-1 at 4 (¶ 7).

     [13] 9th Cir. Order – ECF No. 140.
25
     [14] Order – ECF No. 139.
26
     [15] Order – ECF No. 170.
27
     [16] Marquez Decl. – ECF No. 200-1 at 5 (¶ 11).

     [17] *Id.* at 7 (¶¶ 21–23).
28
     [18] *Id.* at 8 (¶ 26).

*v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021), the plaintiffs believed their meal- and rest-break claims to be revived.[19] For those claims, they estimated the potential maximum liability to be $1 million. Also, "[t]he maximum potential PAGA is approximately $28.2 million, but any award of PAGA penalties for this claim would raise Due Process concerns."[20]

The parties participated in four mediations: one in 2019, two in 2020, and the last on August 2, 2022 with Jeffrey Krivis, Esq., an experienced wage-and-hours mediator. At that last mediation, the parties reached an agreement on key terms.[21]

The plaintiffs filed a motion for preliminary approval of class action settlement on June 1, 2023.[22] The motion includes a request for leave to file a consolidated complaint.[23] The court held a hearing on July 27, 2023. All parties consented to magistrate-judge jurisdiction.[24] 28 U.S.C. § 636(c).

## 2.  The Proposed Settlement

All defined terms have the same meaning as in the Settlement Agreement. (The terms are capitalized below, even if that is grammatically awkward.)

### 2.1  Settlement Class

The "Settlement Class" is defined as "Defendant's current and former non-exempt employees who worked for Defendant in California at any time from January 1, 2017 through October 31, 2022." The Class excludes the following groups:

> (a) any employee who has filed a separate lawsuit (individually and/or as a putative class or representative action) that remains pending as of the date of preliminary approval of this Settlement Agreement asserting the same or similar claims to those alleged in the Lawsuits, including but not limited to the named plaintiffs in *Andrea Sosa v. Bank of America National Association*, 22STCV18958 (Superior Court of

---

[19] *Id.* at 5–6 (¶ 15).

[20] *Id.* at 8 (¶ 27).

[21] *Id.* at 3 (¶ 2), 5 (¶¶ 12–13).

[22] Mot. – ECF No. 200.

[23] SAC – ECF No. 200-3; Proposed Order – ECF No. 200-5 at 8 (¶ 21).

[24] Joint Consent – ECF No. 40; *Suarez* Consents – ECF Nos. 7–8.

United States District Court
Northern District of California

1
2
3
4
5

California, County of Los Angeles), *David Gentilcore, Gino Palomino, Angela Loukos, and Debra Delgado v. Bank of America, N.A.*, 2:21-cv-01237-TLN-CKD (United States District Court for the Eastern District of California), *Susan Gomez Rivas v. Bank of America, N.A.*, HG21110153 (Superior Court for the State of California, County of Alameda), and *Charlotte Lee v. Bank of America Corporation and Bank of America National Association*, BCV-21-100770 (Superior Court of California, County of Kern); and (b) any employee who has previously released all the Released Claims and Released PAGA Claims.[25]

6
7
8
9
10

The "Aggrieved Employees" (for purposes of the PAGA penalties allocation) are "Defendant's current and former non-exempt employees who worked for Defendant in California at any time from February 14, 2017 through October 31, 2022 and whose PAGA claims being settled and released in this Settlement Agreement have not all been released previously as part of another court-approved PAGA settlement."[26]

11

There are 12,000 Class Members.[27]

12

## 2.2   Settlement Amount and Allocation

13
14
15
16
17
18
19
20
21

The total non-reversionary Gross Settlement Fund is $1,500,000, and the Net Settlement Fund — the fund recovered by the Class — is approximately $560,000 after the following deductions: (1) Enhancement Awards for the Class Representatives (not to exceed $10,000 each); (2) attorney's fees (not to exceed $500,000 or 33.33% of the Gross Settlement Fund) and costs (not to exceed $250,000) awarded to Class Counsel; (3) Settlement Administration Costs (not to exceed $70,000); (4) the PAGA Amount of $100,000 (with $75,000 to be paid to the California Labor and Workforce Development Agency and $25,000 to be paid to the Aggrieved Employees); and (5) "any employer-side payroll taxes for the wages portion of each Individual Settlement Payment."[28] The Settlement Agreement also provides for certain increases to the Gross Settlement Fund in the

22
23
24
25
26
27
28

---

[25] Settlement Agreement – ECF No. 200-2 at 7 (¶ 17).

[26] *Id.* at 11 (¶ 28).

[27] Marquez Decl. – ECF No. 200-1 at 7 (¶ 23).

[28] Settlement Agreement – ECF No. 200-2 at 9 (¶ 23), 10 (¶ 25), 11–13 (¶¶ 28–33); Notice – ECF No. 200-4 at 3 (stating the estimated Net Settlement Fund); *see also* Mot. – ECF No. 200 at 15, 17.

United States District Court
Northern District of California

event that Bank of America's class data yields more than the expected number of pay periods for Class Members.[29]

Claim forms are not required.[30] Each Class Member and Aggrieved Employee will receive a pro rata portion of the relevant fund based on the number of pay periods that person worked during the relevant time period, January 1, 2017 through October 31, 2022.[31] The Settlement Administrator will issue settlement payments as checks, which will be good for 180 days.[32] The Settlement Agreement also provides a process by which Class Members may dispute the amount of their Individual Settlement Payments.[33]

The settlement is non-reversionary.[34] Uncashed checks will be distributed to the State of California Unclaimed Property Fund in the name of the Class Member.[35]

### 2.3    Release

The release provisions of the settlement agreement are, in short, (1) a release of the class and PAGA claims for all claims under federal or state law that were pleaded or could have been pleaded under the facts alleged in the complaint, and (2) a general release by the Class Representatives.[36]

### 2.4    Administration

CPT Group, Inc. is the proposed Settlement Administrator.[37] Within thirty calendar days of this order, Bank of America will provide the Class List to CPT.[38] Within ten calendar days of

---

[29] Settlement Agreement – ECF No. 200-2 at 26 (¶ 52) (escalator provision).

[30] *Id.* at 14 (¶ 34).

[31] *Id.* at 14 (¶ 35); *see also* Mot. – ECF No. 200 at 16.

[32] Settlement Agreement – ECF No. 200-2 at 14 (¶ 34); *see also* Mot. – ECF No. 200 at 16.

[33] Settlement Agreement – ECF No. 200-2 at 16 (¶ 38).

[34] *Id.* at 9 (¶ 23).

[35] *Id.* at 19 (¶ 43); *see also* Mot. – ECF No. 200 at 16.

[36] Settlement Agreement – ECF No. 200-2 at 21–23 (¶¶ 46–48).

[37] *Id.* at 13 (¶ 33).

[38] *Id*. at 19 (¶ 44).

United States District Court
Northern District of California

receipt of the Class List, CPT will send the Notice to the class members via first-class mail.[39] CPT will "perform[] necessary additional skip traces on Notices . . . returned as undeliverable."[40]

CPT will also administer the Notice, handle the payments to Class Members, maintain the settlement monies for disbursement, establish a settlement website, and prepare tax forms required with disbursement of the funds.[41] Other administrative procedures — including for notice, exclusions, and objections — are set forth in the Settlement Agreement.[42]

# ANALYSIS

## 1.  Jurisdiction

The court has diversity jurisdiction under the Class Action Fairness Act (CAFA). 28 U.S.C. § 1332(d).

## 2.  Certification of Settlement Class

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Class certification requires the following: (1) the class is so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the person representing the class will fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953. Also, the common questions of

---

[39] *Id.* at 20–21 (¶ 45).

[40] *Id.* at 13 (¶ 33).

[41] *Id.*

[42] *Id.* at 15–21 (¶¶ 37–45); Notice – ECF No. 200-4.

United States District Court
Northern District of California

1   law or fact must predominate over any questions affecting only individual class members, and the

2   class action must be superior to other available methods for fairly and efficiently adjudicating the

3   controversy. Fed. R. Civ. P. 23(b)(3).

4       The court finds (for settlement purposes only) that the proposed settlement class meets the

5   Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy. Also, under Rule

6   23(b)(3) (and for settlement purposes only), common questions predominate over any questions

7   affecting only individual members, and a class action is superior to other available methods.

8       First, with 12,000 members, the class is numerous. *See, e.g.*, *Gonzalez v. Ahern*, No. 19-CV-

9   07423-JSC, 2023 WL 3322579, at *4 (N.D. Cal. May 9, 2023).

10      Second, there are questions of law and fact common to the class. Common questions include

11  whether Bank of America's policies or practices forced the plaintiffs to work off the clock, whether

12  Bank of America failed to pay for pre-shift, post-shift, and overtime work, and whether Bank of

13  America impeded the plaintiffs from taking meal and rest breaks. *Stonehocker v. Kindred*

14  *Healthcare Operating LLC*, No. 19-CV-2494-YGR, 2021 WL 1643226, at *4 (N.D. Cal. Apr. 27,

15  2021) ("The focus of this action is common to all class members, namely, whether [the] defendants

16  failed to pay all wages owed, including pay for off-the clock time."). For example, the plaintiffs

17  allege that they "had to wait several minutes for their computers to boot up before they could clock-

18  in and receive payment for work."[43] This presents a common question of fact for office employees.

19  Overall, the claims depend on common contentions, the determination of which "will resolve an

20  issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v.*

21  *Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL

22  1278758, at *4 (N.D. Cal. Apr. 6, 2017). Furthermore, these common questions predominate over

23  any questions affecting only individual members.

24      Third, the claims of the representative parties are typical of the claims of the class. The named

25  plaintiffs and all class members allege the same violations based on similar facts. The

26  representatives possessed the same interest and suffered the same injury as the rest of the class.

27

28  [43] SAC – ECF No. 200-3 at 9 (¶ 19).

*Stonehocker*, 2021 WL 1643226, at *4 (typicality requirement satisfied where the named plaintiff is an employee of the defendants, in a position similar to other class members, in a wage-and-hour case).

Fourth, the representative parties will fairly and adequately protect the interests of the class. Two factors are relevant to the adequacy determination: (1) whether the named plaintiffs and their counsel have potential conflicts with the other class members; and (2) whether counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1020). Here, the named plaintiffs have shared claims and interests with the class (and no conflicts of interest), and they retained qualified and competent counsel who have prosecuted the case vigorously.[44] *See id.*; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The court's previous denial of class certification does not change this analysis. *Harrison*, 2021 WL 5507175, at *5. Certifying a Rule 23(b)(3) class for settlement purposes does not raise the same manageability issues that certifying a litigation class does. *In re Hyundai and Kia*, 926 F.3d at 556–57 ("The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial."); Fed. R. Civ. P. 23(b)(3)(A)–(D) (manageability is just one factor in determining whether common questions predominate).

Moreover, the court's class-certification orders turned on the strength of the plaintiff's evidence (such as expert reports) on the predominance factor.[45] "[P]laintiffs wishing to proceed through a class action must actually *prove* . . . that their proposed class satisfies each requirement

---

[44] Marquez Decl. – ECF No. 200-1 at 11–15 (¶¶ 39–46); *see also* Mot. – ECF No. 200 at 19.

[45] *See generally* Order – ECF No. 128.

United States District Court
Northern District of California

1   of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)." *Halliburton*

2   *Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). At the settlement stage, by contrast, the

3   viability of class certification after further discovery later in the case must to some degree be a

4   matter the parties may compromise over. For example, where a class has already been certified but

5   there are "significant risks of decertification" going forward, courts consider such risks to

6   "weigh[] heavily in favor of the fairness of a settlement under which [the] plaintiffs achieved

7   substantial benefits that (as in any settlement) fell short of what they might have hoped to

8   achieve." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013). Similarly, where a class has not

9   yet been certified, that is (to some extent) a litigation risk favoring approval of the parties'

10  compromise. *See, e.g.*, *Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 WL 16823044,

11  at *7 (N.D. Cal. Nov. 8, 2022).

12      In sum, the prerequisites of Rule 23(a) and (b)(3) are met. The court certifies the class under

13  Rule 23(b)(3) for settlement purposes only.

### 3.  Preliminary Approval of Settlement

16      A court may approve a proposed class-action settlement only "after a hearing and only on

17  finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

25  Fed. R. Civ. P. 23(e)(2). "To survive appellate review, the district court must show it has explored

26  comprehensively all Rule 23(e)(2) factors[.]" *In re Apple Inc. Device Performance Litig.*, 50 F.4th

27  769, 782 (9th Cir. 2022) (cleaned up).

28

United States District Court
Northern District of California

Also, these factors "are substantially similar to those articulated" in *Hanlon*, 150 F. 3d at 1027. *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *2 n.2 (N.D. Cal. July 8, 2021); *see Saucillo v. Peck*, 25 F.4th 1118, 1124 n.3 (9th Cir. 2022) ("[W]e need not reach the question as to how district courts should incorporate the Rule 23(e)(2) factors into their analyses."); *Briseno v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) ("Although we need not decide whether a district court always abuses its discretion by applying the judicially manufactured factors in . . . *Hanlon*, we must follow the [Rule 23(e)(2) factors]."). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. 150 F.3d at 1026.

When parties "negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). "Specifically, such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* at 1048–49 (cleaned up).

The court has evaluated the Settlement Agreement for overall fairness and concludes preliminarily that it is free of collusion and approval is appropriate.

First, the settlement provides good value when contrasted with the maximum damages estimated by the plaintiffs. Counsel reached the settlement only after obtaining discovery sufficient to allow a robust damages assessment. Counsel estimated the theoretical maximum damages to be in the tens of millions of dollars, based on an analysis of an estimated 282,645 pay periods worked by putative class members at an average pay rate of $25.08 per hour.[46] But the

---

[46] Marquez Decl. – ECF No. 200-1 at 7 (¶ 23); *see also* Mot. – ECF No. 200 at 23.

United States District Court
Northern District of California

1    meal- and rest-period claims led to a potential maximum liability of $1,000,000 plus PAGA

2    penalties.[47] The $1.5 million settlement amount is therefore reasonable.

3         Second, the value of the settlement is significant compared to the litigation risks and

4    uncertainties. The maximum recovery assumes complete success for the plaintiffs, which was not

5    a guaranteed outcome. While the plaintiffs contend that their claims have merit, they also

6    acknowledge that Bank of America defeated their motion for class certification once. Additionally,

7    Bank of America has legitimate defenses, especially to the plaintiff's derivative claims. For

8    example, for the wage-statement and waiting-time-penalty claims, Bank of America could argue

9    that there was a good-faith dispute that any wages were due. These factors support preliminary

10   approval, as the plaintiffs' ability to obtain class certification and prevail on their claims was far

11   from guaranteed.[48] When viewed against the risk of little or no recovery, this settlement is fair. *See*

12   *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including

13   maintaining class-action status, favor settlement approval). Moreover, settlement allows payment

14   to the Class Members now, before costly and protracted litigation.

15        Third, a class action allows class members — who otherwise would not pursue their claims

16   individually because costs would exceed recoveries — to obtain relief.

17        Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and

18   was reached after mediation with an experienced mediator with subject-matter expertise.

19        The recoveries here are adequate to justify preliminary approval. Given the litigation risks

20   identified above, the settlement amount at least preliminarily appears fair.

21        The court has also considered the Rule 23(e)(2) factors and finds that they support preliminary

22   approval of the settlement as fair, reasonable, and adequate.

23        The PAGA allocation of $100,000 is within the range of reasonable settlements. *See, e.g.,*

24   *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct.

25   11, 2016).

26

27   _____

    [47] Marquez Decl. – ECF No. 200-1 at 8 (¶ 27); *see also* Mot. – ECF No. 200 at 23.

28   [48] Mot. – ECF No. 200 at 21–22.

*United States District Court*
*Northern District of California*

1    Class Counsel have not yet moved for attorney's fees, and in any case the court will address

2    the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five

3    percent is a benchmark in common fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

4    1048 (9th Cir. 2002) (twenty-five percent benchmark, though a starting point for analysis, may be

5    inappropriate in some cases; fees must be supported by findings).

6

7    **4.   Appointment of Class Representative, Class Counsel, and Settlement Administrator**

8        The court appoints plaintiffs Irma Frausto and Arianna Suarez as the Class Representatives for

9    settlement purposes only. They have claims that are typical of members of the class generally, and

10   they are adequate representatives of the other members of the proposed class. Both plaintiffs were

11   hourly, non-exempt employees of the defendant during the class period, and their claims arise

12   from the same alleged events as those alleged on behalf of the class.[49]

13       The court appoints CPT Group as the Settlement Administrator. It was selected after a

14   competitive bidding process and it has experience with wage-and-hour class actions.[50] It will

15   administer the settlement in accordance with the requirements set forth in the Settlement

16   Agreement.

17       The court also appoints Justin Marquez of Wilshire Law Firm, PLC and Stephen Noel Ilg of

18   ILG Legal Office, P.C. as Class Counsel.[51] Fed. R. Civ. P. 23(a) & (g)(1). They have sufficient

19   qualifications, experience, and expertise in prosecuting class actions, including wage-and-hour

20   class actions.[52]

21

22   **5.   Class Notice**

23       The court approves the Settlement Notice and plan. The court finds that the notice provides the

24   best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class

25

26   [49] Marquez Decl. – ECF No. 200-1 at 9 (¶¶ 30–31).

     [50] *Id.* at 6 (¶ 19).

27   [51] Settlement Agreement – ECF No. 200-2 at 12 (¶ 30).

28   [52] Marquez Decl. – ECF No. 200-1 at 11–15 (¶¶ 39–46).

United States District Court
Northern District of California

1    members of their rights under the settlement agreement, and meets the requirements of due

2    process. *Cf. In re Hyundai and Kia*, 926 F.3d at 567 ("Notice is satisfactory if it generally

3    describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

4    investigate and to come forward and be heard.") (cleaned up).

5       The forms of notice fairly, plainly, accurately, and reasonably provide class members with all

6    required information, including (among other things): (1) a summary of the lawsuit and claims

7    asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement,

8    including the estimated payment; (4) a disclosure of the release of the claims; (5) the date, time,

9    and location of the final fairness hearing; and (6) the identity of class counsel and the provisions

10    for attorney's fees, costs, and class-representative service awards.[53] Fed. R. Civ. P. 23(c)(2)(B).

11

12    **6. Service Awards**

13       District courts must evaluate proposed awards individually, using relevant factors that include

14    "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

15    has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in

16    pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . .

17    and are intended to compensate class representatives for work done on behalf of the class, to make

18    up for financial or reputational risk undertaken in bringing the action, and, sometimes, to

19    recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563

20    F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some

21    cases incentive awards may be proper but [has] cautioned that awarding them should not become

22    routine practice." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013)

23    (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all

24    incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.*

25

26

27

28

---

[53] Settlement Agreement – ECF No. 200-2 at 19–21 (¶¶ 44–45); *see also* Mot. – ECF No. 200 at 28–29.

United States District Court
Northern District of California

1    at 1164. In this district, a $5,000 incentive award is presumptively reasonable. *Bellinghausen v.*

2    *Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

3        The court defers consideration of the service awards until the final-approval hearing.

4

5    **7.   Compliance with CAFA**

6        The Settlement Agreement provides for compliance with CAFA: within fourteen days of the

7    final-approval hearing, Bank of America is to file "a declaration attesting that CAFA Notice has

8    properly been served pursuant to 28 U.S.C. § 1715."[54] Any final settlement approval will be more

9    than ninety days after service, as required by the Act.

10

11   **8.   Procedures for Final-Approval Hearing**

12       **8.1   Deadlines**

13       The court approves the parties' proposed schedule set forth in paragraph sixteen of the

14   proposed order.[55] The final-approval hearing will be on January 11, 2024.

15       **8.2   Fairness Hearing**

16       At the hearing, the court will consider whether to (1) finally approve the settlement agreement

17   and the releases in it, (2) finally approve the service awards, and (3) award attorney's fees and

18   costs to Class Counsel. The court may, for good cause, extend any of the deadlines or continue the

19   final-approval hearing without further notice to the Class Members.

20       **8.3   Objections to or Exclusions from the Settlement**

21       The objection and exclusion procedures will be those in the Settlement Agreement.[56]

22

23

24

25

26   _____

27   [54] Mot. – ECF No. 200 at 30.

     [55] Proposed Order – ECF No. 200-5 at 7–8 (¶ 16).

28   [56] Settlement Agreement – ECF No. 200-2 at 14–16 (¶¶ 36–37).

United States District Court
Northern District of California

9. **Ancillary Items**

Any party to this case, including any Settlement Class Member, may be heard in person or by counsel, to the extent allowed by the Court, in support of, or in opposition to, the Court's determination of the good faith, fairness, reasonableness, and adequacy of the proposed settlement, the requested attorneys' fees and costs, the requested Class Representative Enhancement Awards, and any order of final approval and Judgment regarding such settlement, fees, costs, and payments; provided however, that no person shall be heard in opposition to such matters unless such person has complied with the conditions set forth in the Notice.[57]

If for any reason the court does not execute and file an order of final approval and judgment, the proposed or if such a final approval order is reversed, the Settlement Agreement and the proposed settlement which is the subject of this Order and all evidence and proceedings had in connection therewith, shall be without prejudice to the status quo ante rights of the Parties to the litigation as more specifically set forth in the Settlement Agreement.[58]

The Settlement Agreement shall not be construed as an admission or evidence of liability.[59]

Pending further order of this Court, all proceedings in this matter except those contemplated herein and in the Settlement Agreement are stayed.[60]

The court consolidates the *Frausto* and *Suarez* cases for settlement purposes only and allows the consolidated complaint at ECF No. 200-3. Consolidation is appropriate because the cases involve common issues of law and fact, as explained above, and it otherwise expedites the settlement proceedings and eliminates unnecessary repetition and confusion. Fed. R. Civ. P. 42(a); *see In re HP Inkjet Printer Litig.*, No. C05-3580 JF, 2010 WL 11488941, at *1 (N.D. Cal. Oct. 1, 2010) (consolidating cases for settlement purposes where the relief provided by the settlement is similar in each and it would be more efficient to administer the settlement in one action).

---

[57] Proposed Order – ECF No. 200-5 at 7 (¶ 15).

[58] *Id.* at 8 (¶ 17).

[59] *Id.* (¶ 18).

[60] *Id.* (¶ 19).

1

United States District Court
Northern District of California

## CONCLUSION

The court (1) preliminarily approves the settlement and authorizes the notices as set forth in this order, (2) approves the notice plan, (3) provisionally appoints the class representatives and class counsel, (4) appoints CPT Group, Inc. as the settlement administrator, (5) orders the procedures in this order, and (6) orders the parties and CPT Group, Inc. to carry out their obligations pursuant to the Settlement Agreement. The schedule for all events is summarized in the chart in the proposed order.[61] The final-approval hearing will be on January 11, 2024.

This disposes of ECF No. 200 in No. 18-cv-01983-LB.

**IT IS SO ORDERED.**

Dated: September 7, 2023

LAUREL BEELER
United States Magistrate Judge

---

[61] *Id*. at 7–8 (¶ 16).

ORDER – No. 18-cv-01202-LB, 18-cv-01983-LB          17