UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ARIANNA SUAREZ,<br><br>         Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>         Defendant. | Case No. 18-cv-01202-LB<br><br>**ORDER GRANTING FINAL APPROVAL** |
| IRMA FRAUSTO,<br><br>         Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>         Defendant. | Case No. 18-cv-01983-LB<br><br>**ORDER GRANTING FINAL APPROVAL**<br><br>Re: ECF Nos. 208 and 210 |

## INTRODUCTION

In these putative class actions under Federal Rule of Civil Procedure 23, the plaintiffs — current and former nonexempt California employees at Bank of America — challenge Bank of America's alleged failure to pay them for their off-the-clock work, provide meal and rest breaks,

or reimburse expenses. The plaintiffs claim violations of the California Labor Code, California's Unfair Competition Law (UCL), and California's Private Attorney's General Act (PAGA).[1]

The parties settled both cases and the court granted the plaintiffs' motion for preliminary approval of the settlement under Federal Rule of Civil Procedure 23(e).[2] The plaintiffs moved for final approval of the settlement and for attorney's fees, costs, and enhancement awards.[3] The court held a fairness hearing on January 11, 2024. The court finds the settlement fair, adequate, and reasonable and approves the final settlement, including the fees, costs, and enhancement awards.

## STATEMENT

The court's previous order summarized the history of the two lawsuits and the provisions of the settlement agreement.[4] The court incorporates those summaries by this reference. There are some differences following completion of the settlement process: there are 16,577 class members rather than the estimated 12,000, the gross settlement amount increased from $1,500,000 to $1,890,000 under the escalator provision, only four class members opted out of the settlement, and no class members objected to the settlement.[5]

The court has diversity jurisdiction under the Class Action Fairness Act (CAFA). 28 U.S.C. § 1332(d). All parties consented to magistrate-judge jurisdiction.[6] *Id.* § 636(c). The court held the fairness hearing on January 11, 2024.

## ANALYSIS

The court's preliminary-approval order explained that the court (1) certified the class for settlement purposes only, (2) approved the settlement as fair, adequate, and reasonable, (3)

---

[1] Second Amended Class Action Complaint (SAC) – ECF No. 200-3. Citations refer to material in the Electronic Case File (ECF) in *Frausto* unless *Suarez* is specified; pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Settlement Agreement – ECF No. 200-2; Order – ECF No. 206.

[3] Mots. – ECF Nos. 208, 210.

[4] Order – ECF No. 206 at 2–7.

[5] Marquez Decl. – ECF No. 208-1 at 7 (¶ 20); Marquez Decl. – ECF No. 210-1 at 6 (¶¶ 15–16).

[6] Joint Consent – ECF No. 40; *Suarez* Consents – ECF Nos. 7–8.

approved the class notice, (4) appointed the class representatives, class counsel, and settlement administrator, and (5) consolidated the cases for settlement purposes.[7] The court incorporates that analysis by this reference. The court notes that no class members objected to the settlement, which further supports settlement approval. *See, e.g.*, *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *6 (N.D. Cal. June 27, 2014).

The next sections address the issues that were left for the final-approval stage: attorney's fees, costs, and enhancement payments.

### 1. Attorney's Fees and Costs

Class counsel moved for $630,000 in fees (one third of the settlement amount) and $203,430.31 in costs.[8] The court awards both amounts.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The court must ensure that the award is reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at 941–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

---

[7] Order – ECF No. 206 at 7–16.

[8] Mot. – ECF No. 208.

The "percentage of the fund" method is typically used. The Ninth Circuit has established a "benchmark" that fees should equal twenty-five percent of the settlement, although courts diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc*., 54 F. App'x 663, 664 (9th Cir. 2003) (affirming thirty-three-percent fee award); *Pac. Enters.*, 47 F.3d at 379 (same).

When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972–74 (9th Cir. 2003); *Pokorny v. Quixtar, Inc.*, No. C-07-0201-SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Priv. Litig.*, No. 5:11-cv-00379-EJD, 2013 WL 1120801, at *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief").

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits made available to class members rather than the actual amount ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4546-VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount made available) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

If the court applies the percentage method, it then typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the

quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016) (holding, under California law, that "the percentage method to calculate [attorney's] fee in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's declarations and the results they achieved in this litigation, the requested fees are reasonable and appropriate as a percentage of the common fund, supported by a lodestar cross-check. Counsel obtained excellent benefits for the class despite a vigorous and skillful defense, and there were significant risks involved with the litigation. The two cases also had a long history and the percentage-of-the-fund method results in a negative lodestar multiplier. As the plaintiffs explain, an award of one third of the common fund in these circumstances — a wage-and-hours case with a relatively small common fund — is appropriate in this circuit.[9]

As for the lodestar cross-check, the billing rates are normal and customary for timekeepers with similar qualifications and experience in the relevant market. *Cuviello v. Feld Ent., Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2 (N.D. Cal. Jan. 12, 2015) ("The Court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation."); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel also submitted a sufficient breakdown of the attorneys' hours to reach a conclusion about the lodestar and the (negative) multiplier.[10] The court grants class counsel's request for fees of one third of the gross settlement amount, in line with the Ninth Circuit's benchmark and the awards in similar cases.

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters);

---

[9] Mot. – ECF No. 208 at 17–31 (collecting cases).

[10] Marquez Decl. – ECF No. 208-1 at 8–16 (¶¶ 27–42); Billing Records, Ex. 3 to *id.* – ECF No. 208-1 at 41–64; Ilg Decl. – ECF No. 208-2 at 3–13 (¶¶ 4–13); Billing Records, Ex. B to *id.* – ECF No. 208-2 at 21–22.

ORDER – No. 18-cv-01202-LB, 18-cv-01983-LB         5

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The record establishes sufficiently the reasonableness of the requested costs.[11] The court approves the requested amount of $203,430.31.

**2. Service Awards**

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this district, a $5,000 incentive award is presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

The record establishes sufficiently the unusually extensive efforts of the class representatives.[12] As the plaintiffs explain, comparable awards have been approved in comparable cases.[13] The court approves awards of $10,000 for each class representative.

---

[11] Marquez Decl. – ECF No. 208-1 at 16–17 (¶ 43); Cost Records, Ex. 4 to *id.* – ECF No. 208-1 at 65–69; Ilg Decl. – ECF No. 208-2 at 3 (¶ 3); Cost Records, Ex. A to *id.* – ECF No. 208-2 at 14–20.

[12] Frausto Decl. – ECF No. 210-2; Suarez Decl. – ECF No. 210-3.

[13] Mot. – ECF No. 210 at 25–26 (collecting cases).

### 3. Ancillary Items

For purposes of this Final Order and Judgment, the Court adopts all defined terms as set forth in the Stipulation for Leave to File Consolidated Complaint and for Settlement and Release of Class and Representative Action Claims filed in the Lawsuits.[14]

Bank of America provided notice of the settlement and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials on June 8, 2023.[15] The court's final approval hearing was more than ninety days after service as required by 28 U.S.C. § 1715.

The certification of the Class is without prejudice to Plaintiffs' and the Bank's rights under the Settlement Agreement if the Settlement and this Judgment do not become effective, as provided in the Settlement.[16]

Plaintiffs and all other Participating Class Members have, by operation of this Judgment, fully, finally, and forever released, relinquished, and discharged the Released Parties from all Released Claims as defined by the Settlement Agreement. The California Labor and Workforce Development Agency (LWDA) and all Aggrieved Employees have, by operation of this Judgment, fully, finally, and forever released, relinquished, and discharged the Released Parties from all Released PAGA Claims as defined by the Settlement Agreement.[17]

Plaintiffs, Participating Class Members, Aggrieved Employees, and the LWDA are hereby enjoined from filing or prosecuting any other cases, claims, suits or administrative proceedings involving Released Claims and/or Released PAGA Claims as applicable.[18]

The funds for any check that remains uncashed after one hundred eighty (180) days from the date of issuance will be transmitted by the Settlement Administrator pursuant to governing California law to the State of California Unclaimed Property Fund, to be held there in the name of

---

[14] Proposed Final Order – ECF No. 210-4 at 3 (¶ 1).
[15] Beldner Decl. & Exs. – ECF No. 213.
[16] Proposed Final Order – ECF No. 210-4 at 4 (¶ 4).
[17] *Id.* at 5 (¶ 11).
[18] *Id.* (¶ 12).

and for the benefit of such class members under California's escheatment laws. In such event, the Settlement Class Members and Aggrieved Employees whose checks remain uncashed after one hundred eighty (180) days, will nevertheless remain subject to the terms of the Settlement Agreement and this Judgment.[19]

The Settlement Administrator, CPT Group, Inc., is entitled to $70,000.00 from the Gross Settlement Fund for the costs and expenses of administering the Settlement.[20]

In accordance with the court's previous approval of the PAGA allocation, the $75,000 payment to the LWDA is approved. A payment in that amount from the Gross Settlement Fund will be made by the Settlement Administrator directly to the LWDA.[21]

The Parties must implement the Settlement Agreement according to its terms.[22]

The Court reserves exclusive and continuing jurisdiction over the Lawsuits, Plaintiff, the Settlement Class Members, and the Bank for purposes of supervising the implementation, enforcement, construction, administration and interpretation of the Settlement Agreement and this Judgment.[23]

If the Settlement does not become final and effective in accordance with its terms, this Judgment will be rendered null and void and will be vacated and, in such event, all related orders entered and all releases delivered in connection herewith also will be rendered null and void.[24]

---

[19] *Id.* at 6 (¶ 14).
[20] *Id.* (¶ 17).
[21] *Id.* (¶ 18).
[22] *Id.* (¶ 19).
[23] *Id.* at 6–7 (¶ 20).
[24] *Id.* at 7 (¶ 22).

# CONCLUSION

The court approves the class-action settlement. This disposes of ECF Nos. 208 and 210 in No. 18-cv-01983-LB. The court will separately enter judgment.

**IT IS SO ORDERED.**

Dated: January 11, 2024

LAUREL BEELER
United States Magistrate Judge